No. 28,278.

C. B. D. COLVER, *Appellant*, v. JONAS W. MILLER, SR., et al., *Appellees*.

(272 Pac. 106.)

Opinion filed December 8, 1928.

*A. L. Moffatt,* of Kinsley, for the appellant.
*W. E. Broadie,* of Kinsley, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The principal question involved in this proceeding brought by C. B. D. Colver against Jonas W. Miller, Sr., was the validity of a tax deed and some matters incidental to that question.

It appears that one George Miller was the owner of a half section of land at the time of his death on June 4, 1909. He left a will

devising a life estate in his land to his brother, Jonas W. Miller, Sr., and devising the remainder to his nephew, Jonas W. Miller, Jr., his heirs and assigns forever, subject to the life estate. The remainder-man is the son of the testator's brother to whom the life estate was given. Later in 1909 Jonas W. Miller, Sr., entered into an agreement with his son-in-law, James Hohn, to take the farm and do with it as he pleased, in consideration that the life tenant should have board and room with the Hohn family. The taxes on the land for 1909 became delinquent and it was sold to the county, and on November 6, 1913, the county clerk executed a tax deed to M. M. Rummell, who transferred it to James Hohn by a quitclaim deed for which the latter paid $500. Hohn quitclaimed the land to M. C. Tubbs on June 21, 1922, and he conveyed it in like manner to the plaintiff, Colver, on November 14, 1923. The deeds to Tubbs and Colver were given as security for an indebtedness of Hohn, and were in fact mortgages. Hohn had erected several buildings and made other improvements on the land and has since paid the taxes up to the year 1922, since which time they have been paid by Tubbs and Colver. The reasonable market value of the land is $16,000, and it was of about the same value in 1913 when the tax deed was issued. Jonas W. Miller, Jr., the remainderman, left the community in 1916, and before going had been told that Hohn was claiming ownership of the land under the tax deed conveyed to Rummel and transferred by him to Hohn. In that year Jonas W. Miller, Sr., executed an oil-and-gas lease on the premises in controversy. It was found that in 1925 the state procured the appointment of an administrator to ascertain and collect inheritance taxes due under the devise of the land, and it was found that there was due from the life tenant $122.49 and from the remainderman $194.91. The land was assessed for taxation in two parcels, a quarter section in each; and in the tax deed it was recited that one tract was sold for $276.36, and the other for $131.50, amounts said to be equal to the cost of redemption of each tract. The final redemption notice recited that one tract was sold for $43.56 and the other for $50.74, and it was added that "notice is hereby given that the following lands and lots situated in Edwards county, Kansas, were sold for the taxes of 1909 on the 6th day of September, 1910, and unless the same are redeemed on or before the 6th day of September, 1913, by payment of the sum opposite each tract, same being costs and

charges computed to said date, same will be conveyed by deed to purchaser." These amounts were much less than the sums necessary to redeem at that time. The court concluded as matters of law that the tax deed is voidable for the reason that the amounts set out in the redemption notice were considerably less than the amounts necessary for redemption; that James Hohn has at all times during his tenancy of the land been a tenant at will of Jonas W. Miller, Sr.; that he had never been in adverse possession of the land; that the inheritance taxes assessed against the Millers are valid liens on the land, and that the probate court had jurisdiction to appoint an administrator to collect the inheritance taxes. Judgment was accordingly given for the remainderman.

There is no dispute as to the facts found by the court, and the principal question raised by plaintiff is that Hohn was not under any obligation to pay taxes on the land and was not barred from obtaining an adverse title to it. He was a tenant of the life tenant and of course cannot deny the title of his landlord, the life tenant. He was in privity with the life tenant. It was the duty of the life tenant to pay the taxes (*Jinkiaway v. Ford,* 93 Kan. 797, 145 Pac. 885), and in no case could he or Hohn, who was in privity with him, acquire a title adverse to the remainderman. In *Wiswell v. Simmons,* 77 Kan. 622, 95 Pac. 407, it was said:

"For the owner of a life estate is disqualified to take a tax title to the prejudice of a remainderman even although the taxes upon which it is based accrued before he acquired any interest in the land, at least in any case where they became due after the creation of the life estate which he later obtained." (p. 623.)

See, also, *Menger v. Carruthers,* 57 Kan. 425, 46 Pac. 712; *Duffitt v. Tuhan,* 28 Kan. 292.

Neither can one who is in privity with the life tenant acquire a tax title against the remainderman, and when Hohn purchased the tax title it amounted to no more than a redemption of the land from the tax lien. The theory of the law is that the taxes on land so held shall be paid out of its proceeds or profits. Primarily it was the duty of the life tenant to pay the taxes, and one succeeding to an interest in his estate who is in privity with him is equally bound to pay them, and the successor cannot acquire adverse rights against the remainderman by the failure of the life tenant or his successor to pay taxes and the purchase of a tax title to the lands. The proceeds of the farm held by Hohn under

the life tenant were amply sufficient to pay the accrued taxes. Hohn had been in possession of the land, worth about $16,000, holding under the life tenant for about nineteen years, paying no more to the life tenant than board and room for the latter, and is now asserting title to the whole of the land for the price of the tax title, $500, as against the remainderman. The life tenant under whom Hohn is holding is still living, and together they are enjoying the benefit of the life estate and at the same time seeking to obtain title to the premises through their failure to pay taxes and the purchase of a tax title that arose through their neglect during their occupancy of the land. The life tenant is supporting Hohn in his claims, as it appears he was present when Hohn obtained the tax title, and both are coöperating in an effort to secure full legal title for the comparatively trifling sum paid for the tax title.

The contention that the remainderman is barred by the lapse of time cannot be sustained. The life tenant was entitled to the possession of the land as long as he lived, and an action to oust him did not accrue in favor of the remainderman while the life tenant was living. It has been said that:

"A disseizin of the life tenant will not affect the remainderman during the tenant's life. The remainderman may recover his seizin from the disseizor at any time after the death of the life tenant, if within the period limited by statute for instituting such action. The statute of limitations begins to run against the remainderman at the death of the life tenant." (1 Thompson on Real Property, § 730.)

The contention that the inheritance taxes found to be a lien on the land were barred by the statute of limitations is without merit. They were imposed by the state and were due to the state. The statute does not run against the state, nor is it estopped by the failure of its officers to perform their duties in the collection of taxes or by reason that they took some unauthorized action. (*Sedgwick County Comm'rs v. Conners,* 121 Kan. 105, 245 Pac. 1030.)

The tax deed itself was bad in that two separate tracts were conveyed and the deed failed to show the amount for which each tract was sold as required by statute. Besides, the amounts stated in the notice for redemption were for sums much less than the amounts required to redeem. In a tax sale of two separate tracts of land it is essential that the deed must show the amount for which each tract was sold, and failing in that the deed is invalid. (*Gibson v. Kueffer,* 69 Kan. 534, 77 Pac. 282; *Manker v. Peck,* 71 Kan. 865, 81 Pac. 171.)

Apart from the invalidity of the deed, however, it must be held for the reasons stated that Hohn was disqualified to acquire tax title to the land, and it is manifest from the findings of the trial court that this was the controlling consideration in its finding in favor of the remainderman.

The action was in form an application for declaratory order or judgment, and there is some complaint that the court did not make a declaratory order on the quitclaim deeds to Tubbs and plaintiff, which were found to be mere securities for debts. Tubbs, it appears, was not a party to this proceeding, and the court was not warranted in determining the validity of a lien in the absence of a party directly interested and through whom plaintiff is claiming rights. The court has considered and made declarations on the substantial questions submitted, and it was not required to consider controversies which may arise between Tubbs, not a party, and others who were parties.

Finding no error in the record, the judgment is affirmed.