No. 29,293.

C. B. D. COLVER, *Appellee*, v. THE CENTRAL STATES FIRE INSURANCE COMPANY, *Appellant*.

(287 Pac. 266.)

Opinion filed May 3, 1930.

*Arnold C. Todd, Hal M. Black, Carl O. Bauman,* all of Wichita, and *W. E. Broadie,* of Kinsley, for the appellant.

*A. L. Moffat* and *John A. Etling,* both of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a policy of fire insurance on a farmhouse. The defense was based on plaintiff's want of insurable interest.

The material facts were these:

On June 4, 1909, one George Miller died seized of a 320-acre farm in Edwards county. By his will he devised a life estate in the farm to a brother, Jonas W. Miller, Sr., and the remainder to that brother's son, Jonas W. Miller, Jr.

The life tenant had a daughter who was married to James Hohn, following which Jonas told Hohn "to take the land and do what he pleased with it, and farm it, it being agreed that the said Jonas Miller, Sr., should have a room in the house and board with the family."

Accordingly, sometime in 1909 Hohn and wife moved on the farm and occupied it for many years, and Jonas made his home with them. Jonas and Hohn neglected to pay the taxes for several years, and in 1913 a tax deed to the farm was issued to M. M. Rummell, and in 1915 Rummell conveyed it by quitclaim deed to Hohn. In June, 1922, Hohn assumed to convey it by quitclaim deed to M. C. Tubbs, and in November, 1923, the heirs of Tubbs conveyed it by quitclaim deed to the plaintiff, C. B. D. Colver. The quitclaim deeds to Tubbs and Colver were "given as security for indebtedness and being in fact mortgages."

On October 17, 1924, Hohn and wife also gave Colver a mortgage on the farm to secure the payment of their promissory note for $5,795.82, payable on demand.

On December 1, 1925, Colver instituted an action in the district court of Edwards county against the life tenant, the remainderman, and the administrator of the deceased testator who had devised the property as above. The object of the suit was to obtain a declaratory judgment on the validity of the tax deed of 1913, and other matters of no present concern. That action was tried in June, 1927, and the court took the case under advisement for several months.

While the matters were in that situation and waiting the decision

of the trial court, on October 12, 1927, Colver obtained from defendant a policy of fire insurance for $1,500 covering the farmhouse, loss payable to himself, "mortgagee, as his interest may appear at time of loss." In December, 1927, the trial court rendered its decision in the tax-deed case, in which it defined the status of Hohn with reference to the farm as that of a tenant at will. That judgment was reviewed by this court, where it was held that Hohn, being merely the tenant at will of the life tenant, could not acquire title adversely to the remainderman, and that his acquisition of the tax title by quitclaim deed from Rummell had the effect of a redemption from tax sale. (*Colver v. Miller*, 127 Kan. 72, 272 Pac. 106, decided December 8, 1928.)

Four months prior to this court's decision just stated, on August 8, 1928, the farmhouse was destroyed by fire, and on September 5, 1928, this action to recover on the policy was begun.

On issues joined the cause was tried by the court. Aside from a question of veracity between Colver and the agent who wrote the application, touching Colver's statements concerning the nature of his interest in the property, the evidence provoked no serious controversy. The trial court made findings of fact which included a recital of the pertinent matters involved in *Colver v. Miller*, supra. In part, these read:

"I. About October 12, 1927, J. F. Motter, soliciting agent of the defendant insurance company, solicited the insurance on a number of properties owned by the plaintiff, among them being the property in controversy; that several properties were discussed, and plaintiff at that time told Mr. Motter that he held a tax-deed title as security and a mortgage on the property in controversy, and that the matter of the title was then in litigation; that he would like to have insurance on the property, and that Mr. Motter, if he chose to do so, could examine the record title and also examine the property. Mr. Motter did make an examination of the property in question, and at that time talked with James Hohn, and later Mr. Motter prepared an application for insurance which was signed by the plaintiff. . . .

"II. That said company later issued to the plaintiff a policy of insurance upon the dwelling house. . . .

"III. At the time of the issuance of the policy of insurance herein sued on the plaintiff [himself] was a soliciting agent of the defendant insurance company, and he did not at any time notify the defendant of the results of the litigation in [*Colver v. Miller*] . . .

"IV. On August 14, 1928, the dwelling house included in said policy of insurance was destroyed by fire, such dwelling house being insured in said policy against loss by fire in the sum of $1,500.

"V. . . . On August 29, 1928, [defendant] notified plaintiff by letter that it would not pay said loss, and denied liability under said policy, and tendered back to the plaintiff the sum of $72.66 for the premium paid by plaintiff.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"IX. On December 1, 1927, the district court made findings of fact and conclusions of law, in said action of *Colver v. Miller et al.*, finding that said [Rummell] tax deed was invalid, from which judgment and findings plaintiff appealed to the supreme court, where the judgment and findings of the district court were affirmed. . . .

"X. On October 17, 1924, James Hohn and Sadie Hohn, his wife, executed a promissory note to the plaintiff herein for the sum of $5,795.82, whereby they promised to pay said amount on demand; said note was secured by a real-estate mortgage executed on said date, and covering the real property herein described.

"XI. Jonas W. Miller was born on September 28, 1847, and died December 3, 1928, and at the time the fire loss under the policy in this action occurred, his life expectancy, according to the American experience table of mortality, was 4.05 years. James Hohn performed his contract with said Jonas W. Miller, Sr., until the time of the death of the said Miller.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Conclusion of Law.

"The court concludes, as a matter of law, that the plaintiff should have judgment against the defendant for the sum of $1,591.50, together with the costs of this action, and that there should be taxed as costs herein the sum of $500 attorney fees."

Judgment was entered accordingly and defendant appeals, pressing its main contention that Colver had no insurable interest in the farmhouse on the Miller property.

Counsel for these litigants are in practical agreement as to the general rule of law which governs this appeal. Both parties cite textbook authorities and decided cases holding that any person who has an interest in property which may be adversely affected by its destruction has an insurable interest in it. It need not be a certainty that he will suffer a loss if the property is burned; it is enough if he may possibly be damaged thereby. So, too, cases and rules of law are cited holding that a mortgagee, a life tenant, or one in possession of property under claim of right, although such claim is invalid, has an insurable interest. There is authority which holds that even a tenant at will may have an insurable interest. Most of this is familiar law. Our concern is to discover how this plaintiff, C. B. D. Colver, brings himself within this liberal rule of law.

Colver holds a mortgage executed by Hohn, the tenant at will under the life tenant. A tenant at will cannot be assured of a longer occupancy than the time which the statute requires as a sufficient notice to terminate such tenancy—thirty days. (R. S. 67-504.) So, while Hohn might have insured his very limited interest in the farm home as tenant at will because its destruction within the time he could have held possession under the statute would have been a loss to him, that interest was too shadowy to be made the basis of a real-estate mortgage. What could Colver do with such a mortgage? If it were foreclosed what could the sheriff sell and deliver to a purchaser at foreclosure sale? Nothing.

"Tenant at will is, where lands or tenements are let by one man to another, to have and to hold to him at the will of the lessor, by force of which lease the lessee is in possession. In this case the lessee is called tenant at will, because he hath no certain nor sure estate, for the lessor may put him out at what time it pleaseth him." (Coke upon Littleton, 1st Am. Ed. § 68.)

This is still law in this state, except that thirty days' notice in writing is necessary to terminate the tenancy unless the tenant commit waste, in which event no notice is necessary. (R. S. 67-504, 67-509.) The purpose of the statute was to provide a peaceable and fair method of determining the precarious estate, and enabling the landlord promptly to regain possession.

It was an intrinsic quality of an estate at will that it was personal, and could not pass to an assignee. In this instance the service to be rendered by the tenant at will was in fact personal, and an assignment of the tenancy would *ipso facto* determine the estate. While under modern law a mortgage does not constitute a conveyance and merely creates a lien, the essence of the lien is that the mortgagee has power to procure a sheriff's sale of the land to a purchaser to satisfy the debt secured by the lien. Exercise of the power would of necessity defeat itself by terminating the tenancy.

Counsel for the appellee put their own construction upon what was decided in *Colver v. Miller,* supra, and assert that it was there decided that Hohn had acquired the entire interest of Jonas W. Miller, Sr., the life tenant; that Hohn was in effect the life tenant; and the point is made that a life tenant may mortgage his interest as life tenant. It is useless to waste words on that point. Either the decision of the trial court in *Colver v. Miller,* supra, affirmed by this court, that Hohn's interest was that of a tenant at will is *res adjudicata,* or the matter is still open for decision in this action,

and we are bound to hold, as heretofore, that such was the nature of his interest. He was not the life tenant, nor did he acquire all the interest of the life tenant. What the life tenant did do was what any elderly man in his circumstances who was on good terms with his daughter and her husband would naturally do. He wanted to live on that particular farm with his own daughter and her family, and to accomplish that purpose he permitted Hohn and wife to take charge of the farm, and gave Hohn the privilege of conducting it to suit himself, to do what he pleased with it, provided he was given a room and board in the farmhouse with Hohn's family. Such an arrangement was a purely personal one between Jonas W. Miller, Sr., and Mr. and Mrs. Hohn. It did not pass the life interest from Jonas to his son-in-law. It did not transfer an assignable interest in the farm to Hohn. The intimate domestic relationship of the parties which inhered in the contract and was its essential and controlling element and purpose could not be the subject matter of a mortgage nor sold at sheriff's sale to the highest bidder. It is clear to this court that when this farmhouse burned, Colver's mortgage was a nullity; consequently he suffered no loss. He had no insurable interest in the property which burned.

But what about estoppel? Appellee contends that having apprised the agent of the company of the facts concerning his interest in the property, and of the litigation pending to determine that interest, defendant undertook the risk and accepted the premium therefor, and therefore it is estopped to raise the defense that plaintiff had no insurable interest. It seems a sufficient answer to this point to observe that although Colver may be accredited with entire good faith in believing he had a substantial interest in the property as quitclaim title holder under the tax deed and as the holder of a mortgage given by the tenant at will, yet the policy itself provided that the loss would only be payable to Colver, "mortgagee, as his interest may appear at time of loss." Ere that time arrived it had been made to appear that the tax deed was invalid and it had been held that its acquisition by Hohn had extinguished it. Consequently Hohn's quitclaim deed passed nothing through Tubbs and his heirs to Colver. Ere then, also, it had become perfectly apparent that Hohn, the mortgagor under whom Colver claimed, was a mere tenant at will under a conditional contract of occupancy of such an intimate and personal nature that it furnished nothing

substantial which could be the subject of a mortgage. Furthermore, a salutary public policy will not give judicial recognition to a contract of insurance on the life or property of another person issued in behalf of one who has no insurable interest therein. Such insurance is regarded as a mere wagering contract which the courts will not enforce. Consequently the doctrine of estoppel invoked by plaintiff cannot be applied here nor does it vitiate the defense set up against this action. (32 C. J. 1109-1112; 26 C. J. 36; 14 R. C. L. 905-910.)

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.