**WILLIAMS et al. v. WILLIAMS et al.**

No. 12606.

Court of Civil Appeals of Texas.

Galveston.

Oct. 29, 1953.

Arthur P. Terrell and Butler, Binion, Rice & Cook, Houston, for appellant Jayne

Davidson Williams, administratrix of estate of George Dale Williams, deceased.

Herbert G. Tigner, Houston, for appellants Billie W. Pickell and husband, Edmund L. Pickell.

J. P. Markham, Jr., Houston, for appellee Jerry B. Williams.

HAMBLEN, Chief 'Justice.

On February 17, 1944, Southwestern Life Insurance Company issued its policy in the sum of $2,500 on the life of George Dale Williams. By its terms the proceeds of the policy were payable "to Billie W. Williams, wife of the insured, if she be living, otherwise to Jerry B. Williams, son of the insured, and if neither be living, then to the insured's executors, administrators, or assigns." Billie W. Williams was the wife of George Dale Williams, on February 17, 1944, but secured a divorce from him on September 19, 1949. George Dale Williams married Jayne Davidson Williams on December 1, 1949. Billie W. Williams married Edmund L. Pickell on March 3, 1950. George Dale Williams died December 3, 1950. He was survived by his wife, Jayne Davidson Williams, his former wife, Billie W. Pickell and by his son, Jerry B. Williams, each of whom claimed the proceeds of the policy. The insurance company tendered the funds into the registry of the court and by agreement of the parties was dismissed. The trial court, after hearing, rendered judgment in favor of Jerry B. Williams, son of the insured, and from that judgment Jayne Davidson Williams, as administratrix of the estate of the insured, and Billie W. Pickell have perfected this appeal.

We affirm the judgment of the trial court.

Appellant, Jayne Davidson Williams, in her capacity as administratrix of the estate of the insured, bases her claim to the funds upon the proposition that Billie W. Pickell, the divorced wife, has no insurable interest and cannot take, and that Jerry B. Williams is not entitled to the proceeds of the policy because the primary beneficiary, Billie W. Pickell, was living on the date of the insured's death.

It is settled law in Texas that a divorced wife has no insurable interest in the life of her divorced husband and, therefore, cannot recover the proceeds of a life insurance policy on his life. Whiteselle v. Northwestern Mut. Life Ins. Co., Tex.Com.App., 221 S.W. 575. This appears to be conceded by the parties in this case.

The second portion of appellant Jayne Davidson Williams' proposition presents a question which seems never to have been decided in Texas. In support of it appellant cites Bullock v. Expressmen's Mutual Life Ins. Co., 234 N.C. 254, 67 S.E.2d 71, 72 by the Supreme Court of North Carolina, and Beck v. Downey, 198 F.2d 626, by the United States Circuit Court of Appeals, 9th Circuit. In the Bullock case the beneficiary was designated as "Maydie Taylor Bullock, wife of the insured, if living, or if not living to Rudolph Pink Bullock, son of the insured." In the Beck case the policy was payable to David A. Downey, husband (of the insured), if living, or if not living, to Jennie B. Downey, mother-in-law (of the insured). In both cases the insured was murdered by the primary beneficiary. The courts applied the doctrine that a murderer should not profit by his or her wrongdoing and denied recovery to the principal beneficiary. They then construed the language of the policies to deprive the contingent beneficiary of recovery because the contingency, to wit: prior death of the primary beneficiary, had not occurred.

In Beck v. Downey, the contingent beneficiary was the mother of the primary beneficiary. In that case the court suggests that the public policy which prevents the primary beneficiary from profiting by his misdeed should extend to any indirect benefits which he would obtain as a result of a gift to his family, especially a mother from whom, as the court points out, he would normally acquire property by the statutes of descent and distribution. While this is not the only basis upon which the

court reaches its ultimate conclusion, the fact that the argument is suggested, indicates that it entered into the court's thinking. Patently no such consideration obtains here.

In the Bullock case, the contigent beneficiary, though named as "son" in the policy, was in fact a foster son of the insured. The court admitted that the question presented was not without difficulty. It expressed no doubt but that in the light of subsequent happenings, the insured would have wished his foster son to have the insurance money, but concluded that to permit such result would require a change in the terms of the contract which the insured entered into, which the court had no authority to make.

The question is primarily one of intention of the insured. That intention is to be determined from the language of the contract, in the light of the attendant circumstances existing when it was entered into. Beck v. Downey and the Bullock case, being decisions from other jurisdictions, are not necessarily binding upon this court. However, the language in the contract with which we are dealing evidences an intention on the part of the insured different from that found by the courts in those cases. To apply the literal construction applied in the Bullock case, and in Beck v. Downey would, in our opinion, defeat rather than accomplish the intention of the insured, as will be demonstrated.

■ At the time George Dale Williams acquired the policy of insurance he had a wife and a son. They were named beneficiaries, it may be reasonably inferred, not because they were living persons, but because of the relationship which they bore to the insured. The insured intended that the proceeds of his insurance policy should be paid to his wife. If his wife should not take he intended the proceeds to be paid to his son. This intention, it is logical and reasonable to infer, arose out of the financial obligation, both legal and moral, which he felt toward them. At the time the contract was made, the insured anticipated that his financial obligation to his wife would

terminate only in the event of her death prior to his own. The fact that that obligation terminated in a manner other than that anticipated by the insured should not defeat the insured's further intention that his son take alternatively. This further intention is clearly evidenced by a second contingency expressed by the insured, namely, that his estate should receive the proceeds only in the event that neither his wife *nor his son* be living. This second contingency is not expressed in the contracts discussed in Beck v. Downey and the Bullock case. To deny the son the proceeds of the policy would be clearly contrary to the intention of the insured; an intention discovered not by resort to surmise and speculation as to what the insured might have wished, but rather disclosed by the express terms of the contract.

Appellant, Billie W. Pickell, bases her claim to the proceeds of the policy upon the proposition that at the time of the divorce the insured contracted with her to pay income taxes for which she would otherwise be liable; that he failed to pay such taxes and that she had, therefore, an insurable interest as a creditor.

■ While it is true that a creditor has an insurable interest, an examination of the authorities in Texas indicates that the debtor-creditor relationship must exist at the time the policy is taken out or at the time it is assigned to the creditor. Appellant cites no authorities to the contrary. The only authorities cited which might seem to apply a different rule are Simpson v. Clayton, Tex.Civ.App., 146 S.W.2d 504, and Tips v. Security Life & Accident Co., Tex.Civ.App., 188 S.W.2d 219, affirmed by the Supreme Court in 144 Tex. 461, 191 S.W.2d 470. In each of those cases a divorced wife, continued as named beneficiary, was allowed recovery of the proceeds of the policy on a showing that there survived in the divorced wife's custody a child or children of the marriage. The husband was held to be under a continuing moral and legal duty to support his children although their custody was awarded to the mother by the divorce decree.

This appellant also presents extended argument pointing out a trend to look upon insurance as property, and to broaden the classification of persons having an insurable interest. The argument fails in its application to the present case because it fails to note the lack of a second essential requirement. To be entitled to the proceeds of an insurance policy, the recipient must not only have an insurable interest. There must also be discernible an intention on the part of the insured that such person receive the proceeds. Hence the general rule stated that the debtor-creditor relationship must exist at the time the policy is taken out or at the time it is assigned to the creditor. In Simpson v. Clayton and in Tips v. Security Life & Accident Co. [188 S.W.2d 220], the courts discerned the necessary intention from the "continuing moral and legal duty [of the husband] to support [his] children". In the present case the only intention evidenced by the insured is that this appellant take as his wife. Her right to take in that capacity has been foreclosed by the divorce. No intention is discernible, either express or implied, that she take as creditor.

Affirmed.