**KENTUCKY CENTRAL LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Kenneth McNABB, Defendant.**

**No. 92–2141–KHV.**

United States District Court,
D. Kansas.

May 28, 1993.

Lori R. Schultz–Biggins, R. Kent Sullivan, Morrison & Hecker, Overland Park, KS, for plaintiff.

James L. Wisler, Schroer, Rice, P.A., Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff Kentucky Central Life Insurance Company commenced this lawsuit on April 21, 1992, against defendant Kenneth McNabb. Plaintiff seeks a declaratory judgment finding that defendant has no right to recover proceeds from a life insurance policy on the life of Richard Wisdom. Plaintiff claims that defendant had no insurable interest in the life of Richard Wisdom and, therefore, the subject policy is *void ab initio*. Trial to the Court was held on May 20, 1993.

## FINDINGS OF FACT

Having heard the evidence, the Court makes the following findings of fact:

1. On April 5, 1984, Kenneth McNabb went to the office of insurance agent Robert McGee, to secure a policy of insurance on the life of Richard Wisdom. McNabb told McGee that he was not a relative of Wisdom, but that he and Wisdom planned to co-sign a promissory note at First State Bank of Pleasanton, Kansas, to finance the purchase of a tractor-trailer. McNabb told McGee that he and the bank needed life insurance in the

amount of $100,000.00 as protection, in the event of Wisdom's death. McNabb directed McGee to make First State Bank the primary beneficiary (as its interest might appear), and to make McNabb the policy owner and contingent beneficiary. McNabb also supplied McGee the information necessary to complete the application for insurance.

2. Based upon the information which McNabb provided, McGee prepared an application for insurance, collected from McNabb the first quarterly premium in the amount of $44.72, and transmitted an application for insurance to Kentucky Central Life Insurance Company. Wisdom was not present at this meeting between McNabb and McGee, and McGee never saw or talked to Wisdom about the application or the proposed policy. The application bears a signature which purports to be that of "Richard A. Wisdom" as proposed insured. Aside from self-serving testimony of McNabb, however, which the Court does not credit, the record contains no evidence that Wisdom signed the application, or otherwise participated in the policy issuance process.

3. On April 23, 1984, Kentucky Central issued Policy UNA856892, with a face amount of $100,000.00 payable to First State Bank as primary beneficiary and McNabb as contingent beneficiary. McNabb thereafter paid all premiums as they became due.

4. Wisdom and McNabb did not buy the contemplated tractor-trailer or obtain financing for any purpose from First State Bank. Furthermore, they did not share this information with McGee or any representative of Kentucky Central.

5. McNabb was not responsible for any of Wisdom's financial obligations at the time of the policy application (or issuance). At the time McNabb applied for the policy, Wisdom was 22 years old and McNabb was 58 years old. Wisdom could not read or write, other than his name, and he could not add, subtract, multiply or divide. If Wisdom was not mentally incompetent, he had a pronounced learning disability. Because of Wisdom's disability, along with a stuttering problem, his peers teased and socially isolated him as a child. McNabb had known Wisdom since he was two years old and had watched him grow up in Pleasanton, Kansas. In a manner of speaking, McNabb be-friended Wisdom; as Wisdom grew older, McNabb offered him odd jobs from time to time, gave him a Visa credit card for spending money, became Wisdom's drinking buddy, and enticed Wisdom into business deals, which appear questionable to the court.

6. At the time McNabb applied for insurance with Kentucky Central, he had already obtained two policies of insurance on Wisdom's life. These policies, which had been placed with Fireman's Fund and Banker's Casualty, each provided benefits to McNabb or his brokerage account in the amount of $100,000.00 upon Wisdom's death.

7. On August 29, 1990, at age 28, Wisdom died when a chain-saw laceration to the neck severed his spinal cord.

8. In addition to the Kentucky Central, Firemen's Fund, and Banker's Casualty policies, McNabb procured at least seven other life insurance policies on Wisdom prior to his death. These policies, which afforded an additional $920,000.00 in benefits, all designated McNabb, his relatives, or his trading accounts as beneficiaries in the event of Wisdom's death. The additional policies were as follows:

(1) The Reliable Insurance Company: $250,000.00.

(2) New York Life Insurance Company: $200,000.00.

(3) American Contract Bridge League Group Insurance Trust: $100,000.00.

(4) North American Life and Casualty Company: $150,000.00.

(5) Time Insurance Company: $100,000.00.

(6) Fidelity Security Life Insurance Company: $50,000.00.

(7) Mutual of Omaha: two policies totalling $70,000.00.

McNabb placed each of these policies with different insurers and used a different agent to obtain each policy.

9. After Wisdom died, McNabb personally collected $200,000.00 in death benefits under the Banker's Casualty and New York Life policies. His grandchildren also collect-

ed $100,000.00 under the New York Life policy.

10. Whenever McNabb took out a life insurance policy on Wisdom, he had Wisdom execute a promissory note in order to create an insurable interest. With reference to the Kentucky Central policy, Wisdom executed a promissory note in the amount of $100,000.00 on April 1, 1984. McNabb did not expect, and could not realistically expect, that this demand note would be repaid. Wisdom had no apparent means of repayment.

11. According to McNabb, the $100,000.00 note represented indebtedness which Wisdom had incurred in commodity trading transactions with McNabb over a period of years in which McNabb and Wisdom pretended to buy and sell commodities, based on market reports. While McNabb insists that these transactions were "no game," no commodities changed hands, and the record contains no evidence that McNabb or Wisdom ever owned any of the commodities which they purported to buy and sell, e.g., 500,000 bushels of grain.

12. The purpose of the promissory note was to let Wisdom know where he was in the commodity trading game. Wisdom liked the game and gave McNabb successive notes so that McNabb would continue to play with him.

13. McNabb claims that he sold Wisdom various vehicles on credit. No written agreements or other documents evidence any such transactions, and the record contains no credible evidence that McNabb ever owned these vehicles or sold them on credit to Wisdom. In any event, Wisdom never paid one cent for these vehicles and he had no visible means of doing so. McNabb did not reasonably expect that Wisdom would pay him.

14 McNabb is currently on parole from a three to seven year sentence for attempted sale of marijuana, a felony under Kansas law.

15. In all of the foregoing respects, McNabb took unconscionable advantage of a lonely youth, with questionable mental faculties, 40 years his junior. McNabb also made multiple misrepresentations of material fact in his dealings with various insurance companies. McNabb's credibility as a witness is virtually nonexistent as he clearly plays fast and loose with the truth, and will say whatever is expedient and in his financial self-interest.

## CONCLUSIONS OF LAW

The Court hereby makes the following conclusions of law:

■ 1. K.S.A. § 40–450(a) provides that a person of competent legal capacity may insure his own life, and the beneficiary need not have an insurable interest in the life of the insured. The Court, however, finds that McNabb (not Wisdom) procured the subject policy. K.S.A. § 40–450(a) is therefore inapplicable.

■ 2. A person who insures the life of another must have an insurable interest therein, or the policy is deemed void ab initio. E.g., Geisler v. Mutual Benefit Health and Accident Ass'n, 163 Kan. 518, 183 P.2d 853 (1947); Metropolitan Life Insurance Co. v. Ellison, 72 Kan. 199, 83 Pac. 410 (1905).

■ 3. As the beneficiary, McNabb bears the burden of proving the existence of a sufficient insurable interest. El Fenix de Puerto Rico v. Serrano Gutierrez, 786 F.Supp. 1065 (D.Puerto Rico 1991); Rubenstein v. Mutual Life Ins. Co., 584 F.Supp. 272 (D.C.Ca.1984); Lakin v. Postal Life & Casualty Ins. Co., 316 S.W.2d 542 (Mo.1958).

■ 4. One has an insurable interest in the life of another if he can reasonably expect pecuniary gain from the continued life of the other person and, conversely, if he would suffer financial loss from that person's death. The insurable interest must exist at the time of inception of the insurance policy, Williams v. Williams, 262 S.W.2d 111, 113 (Tex.Ct. App.1953); Couch on Insurance, § 24:155 (2d Ed.1984), and where debt affords the requisite insurable interest, it must be reasonably proportionate to the amount of insurance obtained. Lakin v. Postal Life and Casualty Ins. Co., 316 S.W.2d 542, 551 (Mo. 1958) (policy deemed void as a wagering contract); See also Rubenstein v. Mutual Life Ins. Co., 584 F.Supp. 272, 278 (E.D.La. 1984) (policy deemed null and void).

5. McNabb has failed to identify and prove an insurable interest in Wisdom's life. The *anticipated* loan from First State Bank, which never materialized, does not give rise to an insurable interest.

■ 6. The $100,000.00 promissory note dated April 1, 1984, does not give rise to an insurable interest for the following reasons: 1) the note does not represent a bona fide debt; 2) the note represents an unlawful criminal transaction pursuant to K.S.A. § 50–123 and is against public policy of the State of Kansas; and 3) defendant did not expect to receive a pecuniary gain from Wisdom's life with respect to the note.

■ 7. The alleged sales do not give rise to an insurable interest for the following reasons: 1) the court is unpersuaded that such "sales" actually occurred, and McNabb has failed to meet his burden of establishing an insurable interest based thereon; 2) McNabb never had a realistic expectation of repayment; and 3) the alleged debts are grossly disproportionate to the amount of the subject policy.

■ 8. The incontestability clause does not bar plaintiff from asserting lack of insurable interest. *See e.g., Bromley's Administrator v. Washington Life Insurance Company,* 122 Ky. 402, 92 S.W. 17 (1906) (the parties to an illegal contract cannot by stipulating that it shall be incontestible, tie the hands of the court and compel it to enforce contracts which are illegal and void); *Carter v. Continental Life Insurance Co.,* 115 F.2d 947, 948 (D.C.Cir.1940) ("It is well settled that the incontestible clause does not prevent the insurer from asserting [lack of insurable interest]").

■ 9. Waiver and estoppel do not bar plaintiff from raising the defense of lack of insurable interest. *Barton v. Mercantile Ins. Co.,* 127 Kan. 271, 273 P. 408, 411 (1929) (insurance company cannot be held to contract of insurance on principle of waiver where it could not make such a contract in the first instance); *Price v. Trinity Universal Insurance Company,* 8 Kan.App.2d 223, 654 P.2d 485 (1982); *Colver v. Central States Fire Insurance Co.,* 130 Kan. 556, 562, 287 P. 266 (1930).

It is therefore **ORDERED** that Policy No. UNA856892 is *void ab initio;* plaintiff has no obligation to distribute any funds to defendant, other than the amount of premiums paid, plus interest at the current rate as provided by law.