### No. 27,513.

L. H. THOMAS, *Appellee*, v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, *Appellant*, et al.

(257 Pac. 727.)

#### SYLLABUS BY THE COURT.

LIFE INSURANCE—*Assignment of Policy to Person Without Insurable Interest— Public Policy.* A valid twenty-payment life insurance policy for $5,000 was issued to Thomas, payable to his legal representatives. On receiving the policy Thomas assigned it to Hall, as a matter of speculation on the part of Hall, who had no insurable interest in Thomas' life. As a part of the transaction, Thomas executed and delivered to Hall a promissory note for $5,000, payable on demand after Thomas' death. The note was given without consideration, and six years later Hall executed and delivered to Thomas an agreement to rely entirely on the security of the policy for payment. Thomas paid the initial premium, and Hall paid all subsequent premiums. After the policy had become a paid-up policy, dividends accrued on it in the sum of $2,000, and Thomas sued the insurance company for the dividends. *Held,* recovery should be denied on the ground of public policy.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed July 9, 1927. Reversed.

*H. M. Langworthy, Byron Spencer* and *Frank H. Terrell,* all of Kansas City, Mo., for the appellant.

*A. J. Herrod,* of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the insured to recover matured dividends on a paid-up life insurance policy from the company which issued the policy. Plaintiff recovered, and the company appeals.

The application for the policy was made on November 1, 1869. The policy was dated November 1, 1869, and was issued from the home office of the company at Hartford, Conn., in consideration of

---

Life Insurance, 37 C. J. pp. 387 n. 24, 389 n. 30; 3 L. R. A. n. s. 936; 5 A. L. R. 831; 14 R. C. L. 907; 3 R. C. L. Supp. 312.

Thomas v. Connecticut Mutual Life Ins. Co.

the representations and declarations contained in the application and payment of an annual premium of $174.50 for a period of twenty years. The policy insured the life of Leavitt H. Thomas, of Meriden, Conn., in the sum of $5,000, payable to his legal representatives ninety days after notice and proof of his death. The policy was delivered to Thomas. Thomas paid $140.50 on the first premium, and the policy provided the remainder of the first premium, $34, should be carried as an indebtedness against the policy until paid or canceled by dividends. The receipt for the first premium was dated November 1, 1869, recited that it was not to be valid until counter-signed by the agent at Meriden, and was countersigned on November 6, 1869. Thomas testified that something like a week after the policy was issued it was taken over by Seth J. Hall, whose place of business was next door to that of Thomas, who was a merchant. On November 6, 1869, Thomas had received the policy from the company, and Hall proposed to take it off his hands, as a matter of speculation. Thomas had other life insurance, felt he had been overpersuaded to take the policy, did not want it, and was glad to get rid of it. The result was, Thomas executed a formal written assignment of the policy to Hall, and delivered the policy and assignment to Hall. The assignment was dated November 6, 1869. On the same day Thomas gave Hall a promissory note for $5,000, payable on demand after Thomas' death. On the margin of the instrument was a notation that the note was secured by assignment of the policy. Thomas was not indebted to Hall, received no consideration for the note and assignment, and the two men were not related to each other by blood, affinity, business association, or in any other way. Hall paid all subsequent premiums on the policy until the policy was fully paid up. In June, 1875, Hall executed and delivered to Thomas an instrument reciting the giving of the note and the assignment of the policy to Hall, and agreeing to rely entirely on security of the policy for payment of the note. Hall died in May, 1909, leaving a will. The policy and receipts for all premiums including the first were found in his safe. The assignment had been registered with the company. Hall's estate was settled, and the executors assigned the policy to three of his children who were residuary legatees. Thomas was 91 years and 7 months old at the time of the trial.

As indicated, the action was one for dividends accruing on the policy subsequent to the time it became paid up, in the sum of $2,000.

Personal service was made on the company. The Hall residuary legatees, who resided in Connecticut, were made parties to the action, and were served by publication. The petition alleged they claimed some interest in the fund, denied they had any interest, prayed they be required to answer and set forth their claims, and prayed that judgment be rendered declaring they had no interest in the fund. They did not appear or plead. At the conclusion of the introduction of evidence, Thomas moved the court for a peremptory instruction to the jury to return a verdict in his favor, and the company requested the court to instruct the jury to return a verdict in its favor. Thomas' motion was allowed, the company's motion was denied, and the court instructed the jury to return a verdict for Thomas. Judgment was rendered on the verdict against the company for $2,000, with interest from the time the action was commenced, amounting altogether to the sum of $2,188.60. Judgment was also rendered in favor of the plaintiff against Hall's legatees, as prayed for in the petition.

The answer of the company pleaded assignment of the policy by Thomas to Hall, and alleged that Hall and his successors in interest were rightful owners of the policy and the dividends accruing thereon; that the policy was issued at the instance of Thomas and Hall, as part of a gaming contract between them, and was unenforceable; and that because of the assignment, plaintiff had no interest in the policy or the accrued dividends. Assignment of the policy was conceded, and Thomas was obliged to avoid legal effect of the instrument in order to recover. He proved that Hall had no insurable interest in his life, that the note was without consideration, and that he gave the note and assigned the policy to Hall to promote Hall's speculative enterprise. This being true, the assignment was ineffectual to accomplish the purpose for which it was executed.

As indicated, the company contended the policy was issued to Thomas as part of a gaming contract. This contention was not sustained by the evidence. The application was made and accepted and the policy was issued and delivered in the regular way, and Thomas paid the first premium. Therefore, Thomas had in his possession on November 6, 1869, a valid policy of insurance on his own life, with premium paid to November 1, 1870. This being true, Thomas contends validity of the policy was not affected by the void

assignment, and he is entitled to the matured dividends from the company's surplus allotted to the policy.

The court is not concerned with the status of the policy, whether valid or invalid, either as to Thomas or as to Hall's legatees. As assignee of the policy; Hall paid the premiums (diminished by dividends) for the full premium period, amounting to $2,574.44. Thenceforward the policy was entitled to participate in dividends of the company's surplus, which at the commencement of the action amounted to $2,000. Therefore, Thomas seeks to reap the benefit flowing from Hall's conduct, instigated by Thomas' conduct in executing the invalid assignment. If the assignment were merely illegal in the sense that it lacked authority or support of law, it might be disregarded, and Thomas might claim the same privileges he would be entitled to if it had not been executed. But such is not the case. The transaction, which included execution of the sham note, execution of the assignment, and delivery of the note, assignment and policy to Hall, was obnoxious to the public policy of the state. Hall was simply speculating on length of Thomas' life. At the beginning of the transaction Hall had no interest in continuation of Thomas' life, and at the conclusion he had a large pecuniary interest in Thomas' early death. Such transactions are regarded as having a mischievous tendency detrimental to the social welfare, apart from simple lack of legal recognition, and the settled position of this court is that assignor and assignee incur equal odium. While the guilty assignee gets nothing, the assignor will not be aided in attempt to avoid the assignment, escape consequences of his vicious conduct, and harvest where he planted no seed. The law leaves him where it finds him.

The position indicated was definitely taken in the case of *Life Ins. Co. v. McCrum*, 36 Kan. 146 (1887), 12 Pac. 517, and was maintained in the case of *Insurance Co. v. Elison*, 72 Kan. 199 (1905), 83 Pac. 410. While the facts on which those decisions were based differ in detail from the facts of the present case, the doctrine of the decisions is conclusive here. The court is satisfied it has correctly apprehended the public policy of this state, and it is not necessary to review decisions of cases arising in other jurisdictions.

The judgment of the district court in favor of Thomas and against the insurance company is reversed, and the cause is remanded with direction to render judgment for the company.