No. 36,822

CLARA E. GEISLER, Administratrix of the Estate of August Geisler, Deceased, *Appellee*, v. THE MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION and BOYD MESSER, doing business as BOYD MESSER TRANSFER, *Appellants*.

(183 P. 2d 853)

HARRY W. FISHER, judge. Opinion filed August 5, 1947.

*Douglas Hudson,* of Fort Scott, argued the cause, and *Howard Hudson* and *Douglas G. Hudson,* both of Fort Scott, were with him on the briefs for the appellants.

*Walter B. Patterson,* of Fort Scott, argued the cause for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an action to recover death benefits under an accident insurance policy. Judgment was rendered against the insurance company issuing the policy and the beneficiary named therein who, prior to the date of the institution of the action, had been paid the full amount of the benefits payable under the terms of that instrument. Both insurer and beneficiary appeal.

It will not be necessary to burden our reports with another statement of facts relied on by plaintiff in her petition as ground for recovery. They can be found succinctly stated at pages 453 and 454 of our opinion in *Geisler v. Mutual Benefit H. & A. Ass'n,* 159 Kan. 452, 155 P. 2d 435, and by reference are made a part of this opinion as fully and completely as if they were set forth at length herein.

Eventually, following our decision in the case just cited, the defendants Boyd Messer and The Mutual Benefit Health and Accident Association filed separate answers in the court below. Plaintiff motioned these pleadings and thereafter, pursuant to rulings of the court not here involved, separate second amended answers were filed which, so far as the record shows, were practically alike in form and substance. In their amended answers defendants allege in substance: That the company issued a combination policy of health and accident insurance on one August Geisler, pursuant to an application signed by him, on which Messer paid the premium;

that Geisler·was a truck driver employed upon the same basis as other employees of Messer; that while so employed he upset the gasoline transport truck he was driving as a result of which he suffered injuries causing his death; that Messer obtained and the company issued such policy of insurance in good faith; that concurrently with the application for its execution Geisler executed a paper entitled "Employee Assignment of Policy Applied For," a copy of which is attached to plaintiff's petition; that at the time of making the application for insurance Geisler advised each defendant that he had no interest in the policy and would claim no right, title or interest therein; that the business in which Messer was engaged was transportation of petroleum products, a business of extraordinary hazard, from which Geisler as an employee might have received injuries in his employment and out of which claims on his part might arise against Messer; that in case of death of Geisler in such employment Messer would hold and entertain a feeling of moral responsibility toward payment of expenses in Geisler's burial as an employee whose death was occasioned by the extraordinary hazards of his employment; that the insurance company prior to the assertion by plaintiff of any claim against it under the policy had paid the full face amount of the death benefit to Messer, the person named by Geisler as beneficiary, and that plaintiff was estopped from claiming any interest in the policy. In addition such answers, after denying Messer had no insurable interest in Geisler's life and that there had been a wrongful and illegal collection by Messer, and payment by the company of the death benefits under the policy, alleged that if Messer had no insurable interest then, and in that event, the plaintiff had no interest therein.

To the foregoing amended answers the plaintiff filed a reply. In part, omitting numerous denials and admissions not here material, it reads:

"Plaintiff further alleges with regard to Paragraph 7 that a short time after the death of the said August Geisler that the said defendant, Boyd Messer, agreed to and offered to pay the sum of $500.00 and the funeral bill in exchange for a release and prior to the funeral of the said August Geisler advised the widow that she could spend up to $1,000.00 on the funeral by reason of said policy of insurance and has made other similar statements and promises evidencing a feeling of moral responsibility, but after the said· defendant, Boyd Messer, secured payment of said policy of insurance such moral feeling of responsibility ceased to exist and to this date the said defendant has failed, neglected and refused to pay the sum of $1,000.00 as collected or any part

thereof and to even pay the funeral expenses, although demand has been made upon him by this plaintiff, and if such a defense ever existed as to plaintiff's cause of action, the said defendants have waived the same and are now estopped to assert the same at this time and particularly so in that the said funeral bill amounting to $424.95 is now due and unpaid. That the said defendant, The Mutual Benefit Health and Accident Association, has likewise failed, neglected and refused to pay the proceeds of said policy to this plaintiff, although demand has been made upon said defendant."

With pleadings in substance as heretofore related the cause was tried by the trial court. That tribunal, after hearing the evidence and consideration of lengthy stipulations of the parties as to conceded facts, made extended findings of fact which appear to be supported by evidence. In any event they must be so regarded as the parties neither brief nor argue questions pertaining to their sufficiency.

An entirely different situation prevails with respect to the trial court's conclusions of law, no one of which has the joint approval of the respective parties. They read:

"1. The defendant, Boyd Messer, had an insurable interest in the life of August Geisler, deceased.

"2. August Geisler took out the policy of insurance on his own life and designated Boyd Messer beneficiary.

"3. Boyd Messer recognized his moral obligation to the deceased and to the family of the deceased.

"The Court considers the modern attitude of the courts with reference to such insurance, correctly set out in the following citation:

" 'But in this day and under modern and more enlightened practices employers do not throw injured employees to the dogs when the employer has no liability for the injury. Employers do not first stop to inquire whether they are legally liable for the injury, but, at their own expense, or largely so, they take the injured employee to a hospital, or otherwise furnish all necessary and suitable care and attention, for such reasonable time as required; and, if death results, a decent burial is provided—all this although the employer is not legally liable to all. This is sufficient as a foundation for an insurable interest.' *Neely v. Pigford,* 181 Miss. 306, 178 S. 913, 122 A. L. R. 1188.

"4. Boyd Messer by reason of the promises and his statement and actions obligated himself to the plaintiff and to the payment of the expenses incident to the death of August Geisler to the extent of the proceeds of the policy of insurance.

"5. Boyd Messer having obligated himself cannot justify his refusal to pay for the reason that the plaintiff would not execute a release which embodied waivers and conditions in excess of the amount of payment to be made.

"6. The defendant insurance company was bound to notify plaintiff of settlement.

"7. The plaintiff has judgment against each defendant in the sum of $924.94 and costs."

· The general judgment rendered against the defendants conforms with the conclusions of law. Subsequently, on the theory it was authorized by the provisions of G. S. 1935, 40-256, the trial court awarded plaintiff an attorney's fee and directed the defendant insurance company to pay it as a part of the costs of the action. By virtue of the notice of appeal and specifications of error both judgments are subject to appellate review.

Before giving consideration to the fundamental issues involved we pause to note the record is replete with copious trial and post-trial motions filed by the astute and capable counsel for the respective parties, also rulings of the trial court thereon. Both rulings and motions have been given careful attention. It suffices to say that to treat them in detail would not affect our ultimate decision on the merits and only result in needless prolongation of this opinion. We therefore pass them by without discussion or further comment.

From what has been related it is apparent the primary legal question raised by the appeal, on which all others depend regardless of how they are presented or argued, is one of insurable interest. We therefore proceed directly to its decision.

Boiled down appellee's position on this point is predicated upon the proposition that Messer took out a policy of insurance on Geisler's life making himself beneficiary, that Messer had no such insurable interest in Geisler's life as would permit him to become the legal beneficiary, and that he had no right to collect, and the insurance company no authority to pay him, the death benefits payable under the terms of the policy as a result of Geisler's death. .

It must, of course, be conceded the general rule is that an insurable interest is necessary to the validity of an insurance contract, regardless of whether such contract pertains to property or life, and if no such insurable interest exists the contract is void and unenforceable. (44 C. J. S. 869, § 175; 29 Am. Jur. 289, § 318.)

Following such rule and with particular reference to life insurance cases, since this action is to be determined by rules applicable thereto (*Geisler v. Mutual Benefit H. & A. Ass'n,* 159 Kan. 452, 454, 155 P. 2d 435), this court has repeatedly held that a person who has no insurable interest in another's life cannot take out insurance thereon (*Life Ins. Co. v. Sturges,* 18 Kan. 93; *Life Ins. Co. v. Mc-*

*Crum,* 36 Kan. 146, 12 Pac. 517; *Thomas v. Connecticut Mutual Life Ins. Co.,* 124 Kan. 159, 257 Pac. 727; *Jaklevic v. Supreme Lodge of Fraternal Brotherhood,* 131 Kan. 203, 207, 289 Pac. 467.) Thus in *Life Ins. Co. v. McCrum,* supra, we held:

"A person who has no insurable interest in another's life cannot recover upon an insurance policy on such life, which is purchased during the lifetime of the insured, as a policy so obtained is a mere wager, and void." (Syl. ¶ 1.)

An examination of the decisions just cited reveals that in this state, at least, the doctrine holding such contracts void is founded upon considerations of public policy, the principal reasons for its pronouncement being (*a*) that they are speculative or wagering in character and (*b*) that they afford an incentive to crime in that where close blood relationship is lacking the person to be benefited by the policy is interested in the death, rather than the life of the insured.

It has been well and frequently said that an "insurable interest" is *sui generis,* and peculiar in its texture and operation. (44 C. J. S. 870, § 175 [b]; 1 Couch on Insurance 759, § 293.) Therefore, it is not surprising that in the authorities there exists a great divergence of opinion as to when it exists with respect to a beneficiary who is not a close relative. Evidence of this lack of unanimity is to be found in all well-recognized legal treatises and textbooks.

In 44 C. J. S. 903, 905, § 203 (a), we find the following statement:

"It is difficult to define with absolute precision what will in all cases constitute an insurable interest in the life of a person, so as to take a contract of insurance out of the class of wager policies, the authorities differ to some extent on the question of what constitutes the interest requisite to consititute an insurable interest supporting a policy of life insurance, and generally each case must depend for solution on its own particular facts. Certain general rules, however, may be formulated. Stated concisely, an insurable interest in the life of a person is an interest in having the life continue; a person has an insurable interest in the life of another where there is a reasonable probability that he will gain by the latter's remaining alive, or lose by his death. Stated more comprehensively, an insurable interest exists where there is reasonable ground, founded on the relations of the parties to each other, either pecuniary or contractual or by blood or affinity, to expect some benefit or advantage from the continuance of the life of insured; and unless there is a reasonable pecuniary interest, or a close tie by blood or marriage, justifying the expectation of benefit or advantage from the continued life of insured, a policy of insurance taken out on the life of another is condemned as one of wager for the purpose of speculating on the hazard of a life in which the beneficiary has no insurable interest. Insurable interest is not dependent on who pays the premiums but solely on the relationship the parties bear toward each other. The

naked fact that one is named as beneficiary in a life insurance policy does not give him an insurable interest in another's life. In a few cases an insurable interest has been deemed to be a pecuniary interest in the continuance of the life of insured, and it has been held that mere relationship without definite pecuniary interest is not sufficient to constitute an insurable interest. The rule more generally adopted, however, is that an insurable interest is not always to be limited to a pecuniary interest, that it is not necessary that the expectation of advantage or benefit, should be always capable of pecuniary estimation, and that relationship by blood or marriage alone is sufficient to constitute an insurable interest where it is close enough to indicate that the policy has been obtained in good faith and not for the purpose of speculation, to justify the inference that natural affection would operate efficaciously to protect the life of insured, to give rise to a presumption of some material or physical benefit to be reasonably expected from the continuance of the life of insured, or to justify a well founded belief that loss or disadvantage would naturally and probably arise to the person in whose favor the policy is written from the death of the person whose life is insured.

"At any rate, the authorities agree that a pecuniary interest is sufficient to save the policy. It is enough that in the ordinary course of events pecuniary loss or disadvantage will naturally and probably result from the death of the one whose life is insured to the person obtaining the policy, or that there is a reasonable expectation of pecuniary aid from insured, if needed, or a reasonable expectation of pecuniary benefit or advantage from the continued life of insured. An indirect advantage is sufficient; and except in some jurisdictions, a moral obligation, such as a moral obligation to render care, assistance, or attention in time of need, will support the policy. While an insurable interest is sometimes found to exist by reason of a lethal claim for services or support, it may exist although there is no claim on the person whose life is insured that can be recognized in law or equity."

To the same effect is 29 Am. Jur. 309, 310, § 353, where it is said:

"While all the authorities are agreed that an insurable interest of some sort must exist in the case of life insurance, the authorities are not exactly agreed on the question of what constitutes the requisite interest. There are cases which hold that the interest must be a pecuniary one and that near relationship is not *per se* enough. The weight of authority, however, is to a different effect. The general rule supported in substance by most of the cases is that any reasonable expectation of benefit or advantage from the continued life of another creates an insurable interest in such life; the advantage or benefit need not be capable of pecuniary estimation, but an insurable interest may be predicated upon any relation which is such as warrants the conclusion that the person claiming an insurable interest has an interest, whether pecuniary or arising from dependence or natural affection, in the life of the person insured. An insurable interest in the life of another has been defined by statute as a lawful economic interest in having the life of another continue, as distinguished from an interest which would arise only by the death of the insured."

Mr. Couch in his work on insurance law says:

"As above stated, and as has often been remarked by the courts, it is difficult to define with precision what will, in all cases, constitute an insurable interest in human life. Speaking generally, however, it may be stated that it ought to be such an interest as would take the risk out of that class denominated 'wagers,' and of such a nature as would justify a reasonable expectation of advantage or benefit from the continuance of the life insured, but this may rest upon a pecuniary basis, as that of creditor of, or surety for, the insured, or may be based upon consanguinity or affinity, involving a claim to support, or some advantage, or even upon a contemplated marriage. In other words, an insurable interest in the life of another is such an interest, arising from the relations of the party obtaining the insurance, either as a creditor of, or surety for, the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. Again, it has been well said that whenever there is any well-founded expectation of, or claim to, any advantage to be derived from the continuance of a life, there is an insurable interest, though there may be no claim on the person whose life is insured that can be recognized in law or equity the essential thing being that the policy be obtained in good faith, and not for the purpose of speculating upon the hazard of a life. (1 Couch on Insurance, 758, 759, § 292.)

That the same situation prevails with respect to life insurance contracts involving ordinary employers and their employees is recognized by Mr. Appleman in his work on insurance law and practice. In it he states:

"As to whether or not an ordinary employer has an insurable interest in the life of an employee, there is a direct conflict of authority. Several cases have stated that there is no such interest ordinarily, unless he has a substantial economic interest in the life of such employee, and a small or insignificant economic readjustment which would be necessary is insufficient, even though an actual contract of employment exists. Other cases have held that such employer does have an insurable interest in the life and welfare of his employees, even as to matters for which they have no legal liability." (2 Appleman's Insurance Law and Practice, 259, § 872.)

However, in most actions to recover death benefits under insurance contracts, it should be noted that in reaching conclusions as to what constitutes an insurable interest great liberality is indulged in determining whether the beneficiary, alleged to have no such interest, has anything at hazard in the subject matter of the insurance. Likewise, observed that any interest which would be recognized by a court of law or equity is sufficient. (44 C. J. S. 870, § 175[b].)

Based upon the foregoing authorities, without attempting the im-

possible task of distinguishing the countless decisions on the subject, we conclude that in its final analysis existence of an insurable interest depends upon the inherent nature of the financial, beneficial or personal relationship existing between the parties involved and that the all-important and essential thing to be taken into consideration in its determination is whether the policy was obtained in good faith, and not for the purpose of speculating on the duration of a life in which the beneficiary had no interest.

Assuming for present purposes, as contended by appellee, that Messer took out the insurance policy in question, can it be said that he had no insurable interest in Geisler's life on the date of its execution. We turn to the record. It discloses:

1. That Geisler, a man thirty-two years old, a school teacher by profession, was employed by Messer to transport gasoline and other petroleum products on the highways and continued in that hazardous employment until the date of his death.

2. That it was Messer's policy to carry accident insurance upon his employees.

3. That shortly after Geisler's employment he signed an application for insurance at Messer's request and thereafter the appellant company issued him a combination accident and health insurance policy by the terms of which he was insured against loss of life, limb, sight or time occasioned by bodily injuries and from loss of time resulting from sickness or disease while such policy was in force and effect.

4. Facts substantially as stated on page 454 of the opinion in *Geisler v. Mutual Benefit H. & A. Ass'n*, 159 Kan. 452, 155 P. 2d 435, which, in the interest of clarity, should be repeated:

"In the body of the policy, August Geisler is named as the insured, and as such was to receive any benefits for personal injuries not resulting in death, and with these provisions we are not presently concerned. If loss of life occur, the benefits are to be $1,000 and under the standard provisions of the policy, this indemnity is payable to the beneficiary if surviving the insured, otherwise to the estate of the insured. No beneficiary was named in the policy proper but, by specific provision, a copy of the application was attached to and made part of the policy. The application signed by the insured shows that the insured named as beneficiary 'Boyd Messer Transfer,' and that the premium is '7.60—$3.60 Qtrly.' The question, 'How much premium have you paid?' is unanswered in the application. In the policy proper it is stated the policy is issued in consideration of the statements made in the application and the payment in advance of $7.60 as first payment, and that the payment in advance and acceptance by the Association of $3.60 quarterly beginning

July 1, 1943, is required to keep the policy in effect. We note also that attached to the policy is a document entitled 'Employees Assignment of Policy Applied For,' which recites that Geisler, the insured, is an employee of Boyd Messer Transfer, and has applied for a policy in the Association 'and the employer has paid the premium on the policy.'" (p. 454.)

5. That the "Employee Assignment of Policy Applied For," dated the same day as the application, contains the following provisions:

"Now therefore, in consideration of such payment of premium, the employee hereby assigns to the employer so much of the benefits that may accrue to the employee under such policy as may be necessary to reimburse the employer for such damage.

"In the event of any claim under this policy, the Association shall not pay the employer therefor without first giving written notice to the employee and an opportunity to object; and the balance of the benefits under the policy, if any, shall be paid by the Association to the employee. The total payment or payments shall be made in full for all benefits stated in the policy."

6. That in addition to matters heretofore mentioned the policy contained the following provisions "consent of the beneficiary shall not be requisite to surrender or assignment of this policy, or to change of beneficiary, or to any other changes in the policy."

7. The fact, conceded by appellee's reply and established by testimony as well, that within a few hours after Geisler's death Messer advised appellee she could spend anything she desired up to $1,000 for her husband's funeral by reason of the policy of insurance.

When the foregoing facts are measured by the rule applicable to the determination of insurable interest we are forced to conclude the trial court's conclusion of law that Messer had an insurable interest in Geisler's life on the date of the issuance of the policy must be upheld. Messer did have an insurable interest in Geisler's life to the extent of any financial loss he might incur as a result of that individual's death while in his employ from a cause for which he was liable in damages. That, by reason of the terms of the "Employee Assignment of Policy Applied For," which we have heretofore observed was a part of the policy itself, was all that he could recover in the event his employee suffered injuries for which he was responsible, the balance being payable to Geisler. It is true, the policy is silent on the question whether Messer as the named beneficiary was to retain all death benefits payable under its terms. Even so, on that point the parties interpreted their own contract to mean he was to retain no greater proportion of such benefits. The evidence is that

Messer not only recognized his obligation with respect thereto within a few hours after Geisler's death by advising the appellee she could spend up to $1,000 for the funeral by reason of the policy of insurance but continued, even after they had been paid to him as beneficiary, to acknowledge his liability by offering to pay the appellee $500 and the funeral expenses amounting to $424.95. The fact a dispute with the appellee resulted in a subsequent repudiation of his obligation has no bearing upon the interpretation given the contract by the parties. Nor does it change their rights and liabilities thereunder.

Our conclusion that Messer had an insurable interest in Geisler's life under the conditions and circumstances disclosed by the record really does away with all necessity for specific reference to appellee's contention the insurance policy constituted a wagering contract. Nevertheless, we feel constrained to briefly give it attention. The ultimate consummation of the negotiations between the parties in this cause resulted in no bet or gaming venture. The contract was entered into by all concerned in good faith, not for the purpose of speculating on the duration of Geisler's life but with the laudable idea of protecting both him and his employer from injury or loss which might result to either of them because of the hazards of the business in which he was employed.

In passing we pause to point out, without deciding the question since its decision is no longer necessary, there is serious doubt whether appellee could have recovered in this action as against the insurance company if her contention the policy of insurance was a wagering contract had been sustained. In *Jaklevic v. Supreme Lodge of Fraternal Brotherhood*, 131 Kan. 203, 289 Pac. 467, is to be found a definite indication to that effect. In the opinion of that case we said:

"It is undisputed that in the inception the arrangement by which the certificate was obtained was clearly a wagering contract. The beneficiary named did not have any insurable interest in the life of the insured and the policy was void so far as Katie Jaklevic was concerned. (*Thomas v. Connecticut Mutual Life Ins. Co.*, 124 Kan. 159, 257 Pac. 727, and cases therein cited.)

"*The lawsuit would end here* except for the fact that, as set forth hereinbefore, one of the by-laws of the society provided for the substitution of other parties as beneficiaries if the named beneficiary 'shall fail for illegality or otherwise' . . ." (p. 207.) (Emphasis supplied.)

Having determined Messer has sufficient insurable interest to support the policy it necessarily follows, unless something to the

contrary is to be gleaned from the contract itself, that the company had a right to pay him, and he had a right to receive, the death benefits payable as a result of Geisler's accidental death. The policy expressly provides "Indemnity for loss of life of the Insured is payable to the beneficiary if surviving the Insured, and otherwise to the estate of the Insured." It may be suggested payment could not be made to Messer as beneficiary except upon notice to the legal representative of the estate of the deceased insured in the same manner the company was required by terms of the assignment to notify Geisler in the event claim was made under the policy, during his lifetime, for accidental injuries suffered by him. If so, the suggestion lacks merit. In the first place the parties did not contract by the assignment or otherwise for notice to the person representing the insured's estate in event of a death claim. In the next place in *Geisler v. Mutual Benefit H. & A. Ass'n,* 159 Kan. 452, 454, 155 P 2d 435, we said "This assignment covers only payments which would have been payable to the insured during his lifetime. . . ." Finally, we find nothing in the record to sustain a conclusion the parties interpreted the contract as requiring notice to anyone in the event of a death claim. The result is the company was not required to give notice of settlement to the appellee as found by the trial court in its conclusion of law No. 6 and the payment to Messer as beneficiary without such notice was proper.

What then must our decision be with respect to the trial court's judgments against the appellant insurance company? Obviously, since it had fulfilled its obligation under the policy it was not liable for the death benefits or any part of them. By the same token, without liability on the policy, the appellee was not entitled to an allowance of any attorney's fee under the provisions of G. S. 1935, 40-256.

We now give final consideration to the judgment against Messer. Heretofore we have mentioned the construction placed upon the contract by the parties and need not labor that point further. We find nothing in the record which releases him from liability to pay appellee the balance of the death benefits in conformity therewith. There is some discrepancy in the record as to its amount but we have concluded the trial court's computation as reflected in conclusion of law No. 7 is substantially correct and should be approved.

In conclusion it should be stated, as will doubtless be observed, we have made no attempt to deal with all of the trial court's con-

clusions of law. As to those not specifically or inferentially referred to it suffices to say our decision makes their consideration unnecessary. For the same reason the opinion ignores arguments advanced by counsel on many legal propositions pertaining to the rights of the parties if the record warranted a conclusion the beneficiary under the policy in question had no insurable interest in the life of the insured.

The judgment against the appellant Messer is affirmed. The judgment against the appellant insurance company is reversed.

HOCH, J., not participating.