JANVIER, Judge.
This is a suit by the designated beneficiary on two industrial life insurance policies each in the sum of $750. The decedent on whose life the policies were issued was Angle L. Holland, forty-two years of age. The beneficiary was in no way related to the insured.
The defense of the insurers as made out by the pleadings prior to the filing in this Court of an exception of no right or cause of action was that, although at the time at which the policies were applied for, the insured had, for some time, been suffering from heart disease, no mention thereof was made in either application and that in fact it was stated in each application that the insured was in good health and was not suffering from “organic heart disease.”
In the Civil District Court for the Parish of Orleans there was judgment as prayed for, the District Judge being of the opinion, as set out in his reasons for judgment, that “evidence with reference to the misrepresentations contained in the application * * * is inadmissible.” He based this *820 reasoning on the fact that there was not attached to either policy the application on which the charge of fraud is based.
The defendant insurer appealed suspen-sively and, during the oral argument before us, filed an exception of no right or cause of action based on the contention that the record shows that the plaintiff, designated beneficiary, had no insurable interest in the life of the insured and that the contracts of insurance were therefore void as contrary to public policy.
Counsel for plaintiff in answer to this contention argued that the exception came too late and should have been filed in limine since it presented issues of fact which had not been raised by the initial pleadings and which the plaintiff had no opportunity of meeting at the trial in the District Court.
The filing of this exception presents a very interesting question which has been considered by our Appellate Courts on numerous occasions having been discussed by our Supreme Court in the distant past in Brown & Sons v. Saul, 4 Mart,N.S. 434, 16 Am.Dec. 175. There the Supreme Court said:
“ * * * It is perhaps a rule, almost without exception, that all objections to the personal capacity of a suitor to appear in justice, should be made in limine litis. All dilatory and declinatory pleas ought to precede the contestatio litis; and even peremptory exceptions should be regularly pleaded, but a total want of legal right in a suitor, in relation to the matters in litigation, ought to be taken into consideration and acted on by courts of justice, at any stage of a cause. * * ”.
We especially direct attention to the words, “personal capacity of a suitor,” and to the further words “a total want of legal right in a suitor,” and we note that here it is not the personal capacity of the plaintiff which is put under attack by this exception, but it is the “right” of the plaintiff to bring the action. Just such a situation was discussed by the Supreme Court in La Casse v. New Orleans, T. & M. R. Co., 135 La. 129, 64 So. 1012. There it was recognized, of course, that, under Article 2315 of our LSA-Civil Code, a widow has a right to recover damages for tort resulting in the death of her husband, but it was further shown that under the Federal Employers Liability Act, 45 U.S.C.A. § 51 et seq., where the husband is killed while employed in interstate commerce, there is no “right” in the widow to bring the action but that a suit may be brought only by the personal representative of the deceased.
In the La Casse case the widow brought suit as widow and obtained judgment in the District Court. When the matter was on appeal before the Supreme Court, the exception of no right or cause of action was filed. It was based on the contention that, at the time of his death, the husband had been employed in the furthering of interstate commerce and that, therefore, no right existed in the widow because of the Federal Employers Liability Act. The Supreme Court said that that was an exception which could be filed in the Supreme Court and considered it, but held that, under the facts shown in the record, the husband had not been engaged in interstate commerce at the time.
There are many other .cases in this State from which the rule has been well established that where, by such an exception, there is put at issue the fundamental right of the plaintiff to recover, that that exception, even though filed only in the appellate Court, may be considered.
In Hand v. Coker, 11 So.2d 272, 275, Mr. Justice Simon, then a Judge of this Court, gave thorough consideration to this question and discussed it at length. There, there was 'involved the right of a wife to maintain an action for the return to the community of funds belonging to the community. After giving lengthy reasons and citing many cases, we, with Judge Simon as organ of the Court, said:
*821 “No exception of no right of action was filed below and none in this court, nevertheless, the obligation of the plaintiff is to make her case legally certain including, of course, a demonstration of her right to prosecute the action she brings.”
See, also, Exception of No Cause of Action, Tulane Law Review, Vol. 9, page 17.
If, as a result of this well established doctrine, there is a total lack of right in the plaintiff, that right may be questioned by exception filed in this Court and it must be considered here. The contention being that, because of the public policy of the State, a beneficiary without any insurable interest has no right to recover on a policy on the life of some one else, that contention seems to put at issue the fundamental right of the plaintiff and may be considered.
Before considering that question of whether the plaintiff is without a right of action, it may be well to set forth our reasons for preferring to decide the matter on this issue rather than on the question of whether or not there was fraud in connection with the procuring of these policies.
The policies are identical, no application is attached' to or referred to in either. Each contains the following statement: “The consideration for this Policy is the payment of the premium stated in the schedule below * * *.” Each contains the following provision: “2. Entire Contract.- — -This Policy contains the entire contract between the Company and the Insured. * * *
On behalf of plaintiff it is argued that since no mention is made of an application and none is attached to either policy, and since the policy was issued on the sole condition that the premium be paid, the condition of health of the insured was not a condition on which the policy was issued and the failure to disclose the ill-health of the insured at that time may not be relied upon as constituting fraud.
Our attention is first directed to LSA-R.S. 22:618 which reads as follows:
“A. No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered. The provision shall not apply to policies or contracts of industrial insurers subject to R.S. 22:213A(1) and 22:259(2).”
Counsel for plaintiff concedes that this in itself does not require that in the case of industrial life insurance an application is inadmissible unless attached to or made a part of the policy, but he directs attention to the statement in the above quoted provision in which contracts of industrial insurers are referred to as being subject to LSA-R.S. 22:213, subd. A(l) and 22:259 (2). LSA-R.S. 22:259 reads as follows:
“(2) A provision that the policy shall constitute the entire contract between the parties, or at the option of the insurer, a provision that the policy and the application therefor shall constitute the entire contract between the parties, and in the latter case the policy must contain a provision that all statements made by the insured shall, in the absence of fraud, be deemed to be representations and not warranties.”
From this it is argued that an industrial life insurance company may provide that the policy shall constitute the entire contract or, at its option, may provide that the policy and the application shall constitute the entire contract, and that, if the latter option is not availed of, then the policy constitutes the entire contract and no reference may be made to the application.
There is much authority apparently in support of this contention. In Mataya v. Delta Life Ins. Co., La.App., 58 So.2d 564, we so held. It is true that in this case the Supreme Court granted a writ of cer- *822 tiorari and then remanded the matter to us for further consideration, but the Supreme Court found no fault with our conclusion that failure to attach the application or make it a part of the policy prevented the admission in evidence of such an application. 222 La. 509, 62 So.2d 817. In that case we cited several other cases, notably Fisette v. Mutual Life Ins. Co. of New York, 162 La. 620, 110 So. 880; Rutherford v. Acacia Mutual Life Ins. Co., La. App., 181 So. 231.
While it is true that defendant relies largely on statements made in the applications as evidencing fraud, and while it is true that the applications were objected to and not admitted in evidence, there is other evidence in the record which indicates to us the great probability that there was fraud. For instance, there can be no doubt at all, even though plaintiff, the beneficiary, denies it, that he was well aware of the condition of the health of the insured when the policy was applied for and there can be no doubt at all that it was he who was instrumental in having the applicant for insurance make the applications.
For another reason we have grave doubt on the question of whether the defendant might rely upon a defense of fraud. It seems very evident that the soliciting agent of defendant, who obtained the applications, must have known of the condition of health of the insured. If he did, then, as a result of numerous decisions, the insurance company would not be permitted to depend upon the defense of fraud. Note the following from Lapeyrouse v. Orleans Industrial Life, Health, Accident & Burial Benefit Ins. Co., La.App., 4 So.2d 569, 571:
“ * * * But in view of the knowledge which the agent had of the prior illnesses of the assured, there was no fraudulent concealment on the part of the assured. The true facts must have been known to the agent, and therefore there could be no fraud within the contemplation of the statute. It has several times been held that there can be no fraud where the representative of the company knows the true facts and fails to disclose them to his principal. See Succession of Dekan v. Life Insurance Company of Virginia, La.App., 172 So. 37, Sharper v. Security Mutual Benevolent Ass’n, La.App., 177 So. 461; and Bordelon v. National Life & Accident Insurance Company, Inc., La.App., 187 So. 112.”
Therefore, because of the several decisions to which we have referred as a result of which there is grave doubt as to the admissibility of evidence showing fraud, in spite of the fact that the record reeks with fraud, we deem it advisable not to decide the matter on this issue, but to return to the question of whether plaintiff had an insurable interest in the life of the decedent.
At the outset of our consideration of the question of whether there was insurable interest and the necessary effect, if there is no such interest, we direct attention to the testimony of plaintiff himself, which we think indicates very plainly that it was he who initiated the applications for the two policies and that therefore it was he who really obtained the insurance although the applications were signed by the insured. We say this because of statements made by plaintiff himself.
When asked whether he was related to the insured, he admitted that he was related to her in no way at all, and when asked:
“How did you get to (be) beneficiary under this policy if you had no interest in her?”
he answered:
“The insurance agent who sold the policy said it made no difference. If you will look at the records of the Atlas Insurance Company, I insured other people too.”
We particularly direct attention to the word “too”, which obviously means “also”. In other words, not only did he insure this insured, but he had insured others also.
*823 In LSA-R.S. 22:613, subd. C(2) insurable interest of one not related closely by blood or by law is defined as follows:
“(2) In the case of other persons, a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the individual insured.”
There is overwhelming authority here and elsewhere to the effect that where there is in the beneficiary a total lack of insurable interest, a policy in favor of that beneficiary on the life of someone else is null, and all that may be recovered is the amount of the premiums which have been paid.
As far as we have been able to ascertain, in every state in the Union it has been held that, in most circumstances where there is a total lack of insurable interest, the policy is a nullity and the designated beneficiary may not recover. In some of the states this is based on the view that such a policy is a wagering contract and is against public policy. In others it is based on the view that it is against public policy that the beneficiary should have an interest in the death of some other person which interest is superior to his interest in the continuance of the life of that other person.
We shall quote from opinions in some of the states, which are illustrative of the principles we are discussing.
Alabama; Commonwealth Life Ins. Co. v. George, 248 Ala. 649, 28 So.2d 910, 914, 170 A.L.R. 1032:
« * * * jn an cases there must be a reasonable ground founded upon the relationship of the parties to each other, either pecuniary or of blood or affinity to expect some benefit or advantage from the continuance of the life of the insured. Otherwise, the contract is a mere wager by which the party taking the policy is directly interested in the early death of the insured.”
Connecticut; Fuller v. Metropolitan Life Ins. Co., 70 Conn. 647, 41 A. 4, IS:
“ * * * It may be purchased by one on his own account, where he may suffer damage from another’s death by reason of kinship, the relation of creditor, or other insurable interest. But when this element of protection is entirely eliminated, the insurance is a wager, and the contract is void.”
District of Columbia; Carter v. Continental Life Ins. Co., 73 App.D.C. 60, 115 F.2d 947, 948:
“ * * * the policy is a contract of wager and for the purpose of speculating on the hazard of a life in which the beneficiary has no interest.”
Illinois; Guardian Mutual Life Ins. Co. v. Hogan, 80 Ill. 35 :
“ * * * There must be reasonable expectation of pecuniary gain or benefit from continuance of life.”
See, also, Gray v. North America Mutual Union, 249 Ill.App. 74; Bruce v. Illinois Bankers Life Association, 207 Ill.App. 555.
Indiana; State v. Willett, 171 Ind. 296, 86 N.E. 68, 71, 23 L.R.A.,N.S., 197:
“ * * * A person has an insurable interest in the life of another, where there is a reasonable probability that he will gain by the latter’s remaining alive, or lose by his death.”
Kansas; Geisler v. Mutual Benefit Health & Accident Ass’n, 163 Kan. 518, 183 P.2d 853, 858:
“ * * * the all important and essential thing to be taken into consideration in its determination is whether the policy was obtained in good faith, and not for the purpose of speculating on the duration of a life in which the beneficiary had no interest.”
Massachusetts; Loomis v. Eagle Life & Health Ins. Co., 6 Gray 396, 399, 72 Mass. 396, 399:
*824 “* * * All, therefore, which it seems necessary to show, in order to take the case out of the objection of being a wager policy, is, that the insured has some interest in the cestui que vie; that his temporal affairs, his just hopes and well grounded expectations of support, of patronage and advantage in life, will be impaired so that the real purpose is not a wager, but to secure such advantages supposed to depend on the life of another.”
New Jersey; Sovereign Camp, W. O. W., v. Muth, 91 N.J.Eq. 460, 109 A. 853:
“ * * * In order that a beneficiary have an ‘insurable interest’ in the life of insured, the continuance of the life of the insured must be to beneficiary’s advantage or benefit, or insured must be under some obligation to render beneficiary care and assistance in time of need.”
Ohio; In Newmore v. Western & Southern Life Ins. Co., 8 Ohio Cir.Ct.R., N.S., 308, the following is quoted with approval from Bliss on Insurance:
“ * * * an insurable interest will be held to exist when the relationship is such that the assured has a legal claim on the insured for services, or for support, or whether though such a legal claim does not exist, yet from the past personal relations of the two, and the treatment of the assured by the insured, or possibly his declared intention, the assured has a reasonable right to expect some pecuniary advantage from the continuance of the life of the insured or to fear loss from his death.”
Pennsylvania; Gilbert v. Moose’s Administrators, 104 Pa. 74:
“ * * * So fraught with dishonesty and disaster, and so dangerous even to human life, has this life insurance gambling become, that its toleration in a court of justice ought not for one moment to be thought of.”
In Louisiana, as already shown, what constitutes insurable interest is defined in our Insurance Code, and, where there is a lack of insurable interest, a policy is null and there is no right to recover under it.
However, because of the fact that in the case at bar it is shown that the applications were signed by the insured herself, it becomes necessary that we discuss the question of whether that fact, i. e., the signature of the insured herself, would overcome the effect of the fact that the beneficiary was without insurable interest and that the beneficiary paid all of the premiums on the policy.
In Nora v. Unity Life Ins. Co., 73 So. 2d 486, 488, the Circuit Court of Appeal for the Second Circuit discussed this question and cited with approval Dolan v. Metropolitan Life Ins. Co., 11 La.App. 276, 123 So. 379, in which appears the following:
“ ‘There is nothing in the law of (or) public policy which would prevent an insured from taking out a life insurance policy and designating a stranger as the beneficiary, and, upon his inability to pay the premiums, permitting the beneficiary to pay them.’ ”
However, we think there is a clear distinction between the case in which the insured of his or her own volition applies for a policy and designates a friend as beneficiary and the case in which the insured is a mere dummy, used by the beneficiary to obtain insurance payable to the beneficiary. The distinction which we would make is discussed in Nora v. Unity Life Ins. Co., supra, as follows:
“It is true that this pronouncement has been the subject of some variation as to application, dependent, however, upon the facts involved. For example, in New York Life Ins. Co. v. Murtagh, 137 La. 760, 69 So. 165, the court concluded that the defense of lack of insurable interest was without *825 merit in view of the fact that the decedent had insured his own life and paid the premiums. The case of Washington v. Victory Industrial Life Ins. Company of Louisiana, La. App., 146 So. 766, sustained the defense because the plaintiff had procured the policy, named herself as beneficiary and paid the premiums thereon, and this conclusion was justified by failure of plaintiff to establish the contention that these acts had been performed with the consent, aid and assistance of the insured. Careful reading of the case of Evans v. Independent Nat. Life Ins. Co., Inc., La.App., 148 So. 264, 265, convinces us that the pronouncement of the court does not justify the great reliance which is placed in this holding by learned counsel for defendant, for the facts in that case were that the plaintiff beneficiary had ‘caused the policy to be issued upon the life of the deceased, named himself as beneficiary, and paid the premiums thereon.’ ”
We believe that, though a beneficiary should be permitted to recover where the insured in good faith takes out the policy, a different situation clearly exists where there are facts such as are shown here, to the effect that the beneficiary was the real party at interest and really induced the insured to sign the applications. There can be no doubt at all that here the beneficiary was responsible for the signing of the applications for those policies. When asked how he became the beneficiary he said that he was told that that made no difference, and we again direct attention to the fact that plaintiff said: “I insured other people too.” Not only did he insure other people “too”, but in this case he had possession of the premium books and the record indicates that he paid all premiums.
Our conclusion is that the beneficiary here had no insurable interest in the life of the insured; that he well knew the condition of health of the insured and that he was primarily, if not totally, responsible for the securing of the policies. In such case it is definitely against public policy to permit the beneficiary to recover.
There should be a recovery up to the amount of premiums paid by such person as may have paid them, but there is nothing in this record to indicate the amount of those premiums. It may be that in the District Court the beneficiary may be able to show the amount of premiums paid by him.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and the matter is now remanded to the District Court for the Parish of Orleans for further proceedings according to law and consistent with the views herein expressed.
Reversed and remanded.