No. 101,834

In the Matter of the Marriage of MARC H. HALL, *Appellant,* and SUSAN C. HALL, *Appellee.*

(286 P.3d 210)

Opinion filed October 5, 2012.

*Ronald W. Nelson,* of Ronald W. Nelson, PA, of Lenexa, argued the cause and was on the briefs for appellant.

No appearance by appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises the issue of whether a district court can order a child support obligor to cooperate with a child support obligee in the obligee's efforts to obtain insurance on the obligor's life if the obligor objects to the issuance of the life insurance policy. We hold that a district court cannot issue such an order because the order would be contrary to public policy as expressed by the Kansas Legislature in K.S.A. 40-453(a), which provides that an insurable interest does not exist if a person whose life is insured makes a written request for the termination or nonrenewal of the policy. Because our holding is contrary to the order of the district court and the Court of Appeals in this case, we reverse those decisions.

## FACTS AND PROCEDURAL BACKGROUND

At a hearing in the divorce proceeding between Marc and Susan Hall, Susan asked the court to order Marc to "cooperate" with her to obtain insurance on Marc's life at Susan's expense. Susan specified that she wanted the life insurance as security for the payment

of any maintenance or child support the court would order Marc to pay. Susan clarified that she was not asking Marc to pay for the life insurance. Marc objected to Susan's request, arguing the court lacked jurisdiction to enter the order.

In the decree of divorce, the court ordered Marc to pay maintenance and child support. In addition, despite Marc's objection, the district court ordered Marc to "cooperate" with Susan's attempts to obtain insurance on Marc's life at Susan's own expense. The court ruled:

"K.S.A. 60-1610[(a)(1)] states that the court shall make provisions for the support and education of the minor children. The Court finds that a major portion of the current support and education of the minor child is coming from Mr. Hall. That if the child were to lose that financial assistance, it would seriously affect his support and education. Since mother is willing to pay for the cost of life insurance, Court will order that Mr. Hall cooperate in Mrs. Hall's purchase of the life insurance policy to ensure support and education in case he were to pass away. I will grant that request."

Marc timely appealed to the Court of Appeals. The Court of Appeals affirmed the district court's order. *In re Marriage of Hall*, 43 Kan. App. 2d 392, 396, 225 P.3d 764 (2010). Marc filed a petition for review which this court granted. Consequently, this court has jurisdiction under K.S.A. 20-3018(b).

## COURT OF APPEALS DECISION

The Court of Appeals first rejected Marc's argument that the district court impermissibly created and divided a property interest under K.S.A. 60-1610(b)(1) (division of property). The Court of Appeals determined the district court was merely attempting to allow Susan the opportunity to secure the child support payments that it had ordered Marc to pay. In addition, the panel concluded the district court had subject matter jurisdiction to enter such an order under K.S.A. 60-1610(a)(1) (child support and education of minor children). *Marriage of Hall*, 43 Kan. App. 2d at 394. Marc did not challenge these holdings in his petition for review.

Instead, Marc focuses on another holding of the Court of Appeals, which was that the district court's order did not violate public policy. In reaching this holding, the Court of Appeals concluded

the only requirement in Kansas is an "insurable interest" between the party taking out the insurance policy and the party whose life is insured. The court held that Susan clearly had an insurable interest in Marc's life as long as she was entitled to receive maintenance and child support payments. *Marriage of Hall*, 43 Kan. App. 2d at 395. Before us, Marc contends the order clearly violates Kansas public policy. As we will discuss, we agree with this argument and consequently reverse this holding of the Court of Appeals.

Finally, the Court of Appeals rejected Marc's argument that the district court's order amounted to a continuation of child support beyond the age of majority and of maintenance beyond the ordered period. The Court of Appeals determined the district court did not err because once Marc's child support and maintenance obligations end, Susan will no longer have an insurable interest in Marc's life. *Marriage of Hall*, 43 Kan. App. 2d at 395-96. Marc renews this argument in his petition for review, but we do not reach the question because we reverse the Court of Appeals on its public policy holding.

## ANALYSIS

The specific public policy issue that we address is whether the district court's order violates Kansas public policy because it is contrary to K.S.A. 40-453(a), which provides that an insurable interest ceases when an insured under a life insurance policy requests the insurer to terminate or nonrenew the policy applicable to such person's life. Marc contends that this statute provides him an "absolute statutory right to terminate any insurance policy on his life." An order depriving him of the ability to exercise his statutory right is against public policy, he argues.

This issue requires us to interpret K.S.A. 40-453(a). Interpretation of a statute is a question of law subject to unlimited review. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 320, 255 P.3d 1186 (2011).

K.S.A. 40-453 provides:

"(a) Determination of the existence and extent of the insurable interest under any life insurance policy shall be made at the time the contract of insurance becomes effective but need not exist at the time the loss occurs. In the case of

life insurance policies issued or renewed for a specific term, *an insurable interest shall not exist for any policy term with respect to any person previously insured by the policy who has, in writing, requested the insurer to terminate or nonrenew the insurance applicable to such person's life."* (Emphasis added.)

Under the plain language of the statute, if Susan obtained a life insurance policy on Marc's life and Marc then requested, in writing, that the insurer terminate or nonrenew the insurance, Susan would not have an insurable interest. That is not exactly the situation presented. Rather, the district court ordered Marc to cooperate in *obtaining* the insurance. But Marc argues this order would be futile if he can terminate the insurable interest and that the legislature's grant of a right of termination expresses a public policy that his life cannot be insured over his objection.

The ultimate reason for Marc to raise this issue is that an insurance contract is not enforceable in Kansas if it conflicts with public policy. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 258, 225 P.3d 707 (2010). Yet, as the Court of Appeals noted in this case, prior decisions of this court have not focused on consent as a basis for a public policy violation and instead have focused on whether the person taking out the life insurance policy has an insurable interest in the life that is insured. Often these holdings have been in the context of a question regarding whether an insurance policy is, in essence, a wager on the life of the insured or whether the possibility of insurance proceeds encourages one to take another's life. Both situations are contrary to this state's public policy. *E.g., Insurance Co. v. Elison*, 72 Kan. 199, 203-04, 83 P. 410 (1905). Because of these public policy concerns, "this court has repeatedly held that a person who has no insurable interest in another's life cannot take out insurance thereon. [Citations omitted.]" *Geisler v. Mutual Benefit H.&A. Ass'n*, 163 Kan. 518, 522, 183 P.2d 853 (1947); see *Tromp v. National Reserve Life*, 143 Kan. 98, 102-03, 53 P.2d 831 (1936) (insurable interest created by alimony obligation); *Colver v. Central States Fire Ins. Co.*, 130 Kan. 556, 562, 287 P. 266 (1930) ("Furthermore, a salutary public policy will not give judicial recognition to a contract of insurance on the life or property of another person issued in behalf of one who has no insurable interest therein."). These cases support the

Court of Appeals' conclusion that the public policy focus is on whether there is an insurable interest.

Nevertheless, since *Elison* and *Geisler*, the Kansas Legislature has provided guidance on the public policy in this area through the development of statutory law, namely with the enactment in the 1990's of several statutes, including K.S.A. 40-450, which requires an insurable interest in the life of another in order to obtain life insurance on another's life; K.S.A. 40-452, which allows an employer to insure an employee's life if the employee consents; and the statute on which Marc focuses, K.S.A. 40-453, which indicates an insurable interest in the life of insured terminates if the insured objects to the policy. After these statutes were adopted, only one appellate court case has discussed the public policy implications of K.S.A. 40-453—*In re Marriage of Day*, 31 Kan. App. 2d 746, 74 P.3d 46 (2003).

*Marriage of Day* involved a divorce action in which the district court ordered the husband to continue ordinary and term life insurance policies on his mother's life and upon her death to pay part of the proceeds to his ex-wife. The ex-wife maintained that she should be entitled to proceeds from the policies because she considered the insurance to be a form of the parties' retirement. *Marriage of Day*, 31 Kan. App. 2d at 748.

On appeal, the *Marriage of Day* court determined there was clearly an insurable interest in the mother's life at the time the policy was taken out, which the court determined was the pertinent time. *Marriage of Day*, 31 Kan. App. 2d at 752-53. Yet, the court found "there are several basic problems with the trial court's rulings." *Marriage of Day*, 31 Kan. App. 2d at 756.

Specifically, the *Marriage of Day* court identified at least three problems with the trial court's order. First, the *Marriage of Day* court noted that "recent legislative action shows a public policy contrary to [the ex-wife's] arguments." *Marriage of Day*, 31 Kan. App. 2d at 756. The court discussed the legislative history of K.S.A. 40-453(a), noting:

"[T]he provisions resulted from H.B. 2083 which was originally intended to allow employers to have insurable interests in employees. Minutes of Senate Committee on Financial Institutions and Insurance, March 12, 1993. The House act was

amended in conference committee, and the broad language of K.S.A. 40-453(a) resulted. This wording, while upholding [the ex-wife's] arguments as to the initial existence of an insurable interest continuing until the time the loss occurs, makes the insurable interest not exist when the insured asks, in writing, for the insurer to terminate or nonrenew the coverage." *Marriage of Day*, 31 Kan. App. 2d at 756.

Second, the *Marriage of Day* court concluded K.S.A. 40-453(a) "also shows the futility of the trial court's ruling, as [the mother] has an absolute right to require the policy be terminated or non-renewed." *Marriage of Day*, 31 Kan. App. 2d at 756. Third, the *Marriage of Day* court determined that the district court was, in effect, requiring a continuance of a gambling contract on the mother's life as she would have to "die short of reaching her normal life expectancy in order to benefit both husband and wife." *Marriage of Day*, 31 Kan. App. 2d at 757. Under this scenario and in light of Kansas' long-standing public policy against insurance in favor of one who is more interested in the insured's death than continued life, the *Marriage of Day* court, citing *Elison*, held that "[t]o require the coverage to be continued against [the mother's] wishes is against public policy." *Marriage of Day*, 31 Kan. App. 2d at 757.

In the present case, the Court of Appeals found *Marriage of Day* factually distinguishable and did not consider the case any further. *Marriage of Hall*, 43 Kan. App. 2d at 395. Further, the Court of Appeals did not expressly consider Marc's arguments based on K.S.A. 40-453.

While we agree that *Marriage of Day* is factually distinguishable, we find the decision's analysis of K.S.A. 40-453(a) persuasive and applicable to this case. The order at issue in this case suffers from the first two problems identified by the *Marriage of Day* court. Primarily, as Marc argues, K.S.A. 40-453(a) grants him a statutory right to request that a policy insuring his life be terminated or nonrenewed. In granting this right, the Kansas Legislature expressed a public policy that a life insurance policy cannot continue without the insured's consent. Second, while life insurance could possibly be obtained, the order to "cooperate" would be futile because of Marc's statutory right.

Although the Court of Appeals did not specifically discuss K.S.A. 40-453(a) or the portion of the *Marriage of Day* decision discussing the implications of the statute, it did generally consider Marc's argument that the district court's order was against public policy because consent of an insured is required in order to obtain insurance on that person's life, stating: "[O]ur research has found no case law or statute in Kansas that specifically requires the insured to consent to having a life insurance policy on his or her life." *Marriage of Hall*, 43 Kan. App. 2d at 395. Based on this conclusion, the Court of Appeals also distinguished cases from other jurisdictions. The court noted that most other states requiring consent do so based on a specific state statute that requires the consent of the insured in order to *obtain* life insurance. Because Kansas has no similar provision, the Court of Appeals in this case dismissed the persuasive authority of these cases. *Marriage of Hall*, 43 Kan. App. 2d at 395.

We agree that in a situation other than where an employer insures the life of an employee, there does not appear to be a statute that requires consent of the person whose life is insured in order for a life insurance policy to be issued. Nevertheless, as Marc argues, K.S.A. 40-453(a) allows the person whose life is insured to object to the continuance of the policy, and when such an objection is stated, the insurable interest ends. By giving Marc or others the right to cancel a policy, the legislature, in essence, has required ongoing consent. From a public policy standpoint, there is little or no difference between K.S.A. 40-453(a) and K.S.A. 40-452(a)—both, in essence, require the insured's consent in order for the life insurance policy to remain effective. There is, of course, a practical difference between the consent being required before the policy is obtained and allowing the insured to give written notice that a policy should be terminated or nonrenewed. After an examination of the legislative history, we can discern no reason for the legislature to adopt a prospective approach in one statute and a retrospective approach in another. Although this difference has multiple implications and creates potential legal distinctions, the public policy implications of both statutes overlap; the Kansas Legislature has expressed its intent that a life insurance policy cannot be ob-

tained or maintained if the insured objects. See *Phillips v. St. Paul Fire & Marine Ins. Co.*, 289 Kan. 521, 525-26, 213 P.3d 1066 (2009) (court must ascertain legislature's intent through statutory language unless statute's language is unclear or ambiguous).

In light of that legislative expression of public policy, we find the decisions from other states persuasive. Generally, courts in other jurisdictions have held that a court cannot issue an order requiring insurance to secure payment of child support if the person whose life is insured does not consent.

For example, in *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008), appellant filed a postdissolution motion requesting an order directing her ex-husband to submit to a physical examination so that she could obtain, at her own expense, a policy on his life, naming her as beneficiary, as security for his alimony and child support obligations. The Nebraska Supreme Court assumed that appellant had an insurable interest. But because Neb. Rev. Stat. § 44-704 (2004) specifically requires an adult insured to consent to an insurance policy on his or her life unless the individual or the individual's spouse is the owner of the policy, the Nebraska Supreme Court ruled that, regardless of an insurable interest, the appellant did not have a right to *"own"* a policy on her ex-husband's life without his consent. *Davis*, 275 Neb. at 948.

Similarly, in *Hopkins v. Hopkins*, 328 Md. 263, 614 A.2d 96 (1992), after the appellant was granted a divorce and awarded alimony payments, she filed in the district court a motion to compel her ex-husband to cooperate with her request for insurance on his life. The appellant maintained that she would pay the premiums and all other costs of the policy; all that was required of the ex-husband was a physical examination. *Hopkins*, 328 Md. at 267. The court ruled that the appellant had an insurable interest in her ex-husband's life as long as he owed her alimony. *Hopkins*, 328 Md. at 269. Even so, because Md. Insurance Code, Art. 48A, § 371 (1991) required written consent of the insured, the Maryland court ruled that "[a] court order requiring the proposed insured to cooperate with the efforts of a party with an insurable interest to obtain a policy of insurance on his life can not effect the consent contemplated by § 371." *Hopkins*, 328 Md. at 275. The court

looked to other jurisdictions with similar statutes and noted that the cases in those jurisdictions make it clear that it is against the public policy of the state to permit an individual to insure the life of another without that person's knowledge or consent. *Hopkins*, 328 Md. at 271; see *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1076 (Del. 2011) (Delaware statute prohibits policies issued without the consent of the insured except in narrow situations); *Lowe v. Rennert*, 869 S.W.2d 199, 203 (Mo. App. 1993) (Missouri statute expressly requires consent except as to children); *Meerwarth v. Meerwarth*, 128 N.J. Super. 285, 289, 319 A.2d 779 (1974) (denying, as a violation of his right to privacy, ex-wife's motion for ex-husband to submit to physical examination so she could secure life insurance on husband's life as security for alimony); *cf. Cook v. Bankers Life and Cas. Co.*, 329 N.C. 488, 493, 406 S.E.2d 848 (1991) (Although generally the consent of the insured is required even if a person has an insurable interest, the North Carolina statute "allows a married person to insure the life of his or her spouse and it does not provide that such a person must have the consent of the spouse to do so. We do not believe we should add this requirement to the statute.").

Likewise, in Kansas, it would be against the public policy expressed in K.S.A. 40-453(a) to prohibit an insured from expressing his or her objection to a life insurance policy on the insured's life. In light of this expression of intent by the legislature, courts "are not free to act on . . . [their own] view of wise public policy" in matters governed by legislation. *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 364, 204 P.3d 1156 (2009). Courts should instead "leave the guidance of public policy through statutes to the legislature." *Higgins*, 288 Kan. at 364; see also *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, Syl. ¶ 2, 56 P.3d 789 (2002) ("Courts should avoid making public policy where the statutory law has developed.").

Hence, we hold a court order requiring a child support obligor to cooperate with a child support obligee's efforts to obtain insurance on the life of an obligor is against public policy, as expressed by the Kansas Legislature in K.S.A. 40-453(a), if the obligor objects to the order. Because Marc objected to the order, the district

court's order in this case was contrary to this public policy. As a result, we conclude the court abused its discretion in issuing the order. See *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (a court abuses its discretion if its decision is based on an error of law).

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

MORITZ, J., not participating.
THOMAS H. SACHSE, District Judge, assigned.