MERRITT, J., delivered the opinion of the court, in which BOGGS, J., joined. STRANCH, J. (pp. 516-21), delivered a separate dissenting opinion.
OPINION
MERRITT, Circuit Judge.
■ This case asks whether the MagnusonMoss Warranty Act extends federal protection to warranties guaranteeing the proper installation of plaintiffs’ “manufactured home.” The Act limits its protections to “consumer products,” so the core issue is whether the plaintiffs’ “manufactured home” is a “consumer product.”[1] As a necessary element of the plaintiffs’ only federal claim in an action between non-diverse parties, the scope of the Act raises questions of both federal jurisdiction over the dispute and the merits of the plaintiffs’ claim. Without discussing whether plaintiffs’ home is a “consumer product,” the district court ruled that the defendant had violated the Act and Tennessee law by improperly installing the plaintiffs’ home. The plaintiffs’ appealed the size of their damage award, and we questioned at oral argument whether there is federal jurisdiction in this case. After supplemental briefing by the parties, we hold that we do have jurisdiction but that the plaintiffs’ home is not a “consumer product.” As such, plaintiffs’ claim under the Magnuson-Moss Warranty Act fails on the merits and we dismiss it. We remand for the district court to decide whether it wishes to exercise supplemental jurisdiction over the plaintiffs’ remaining state-law claims.
I.
In 2004, the plaintiffs’ home in Rockvale, Tennessee, burned down. To replace it, they purchased a 2180-square-foot, “triple-wide” manufactured home from the defendant, with upgrades like multiple porches and decorative brick, for a total of $160,230. As part of the sales agreements, defendant was responsible for “normal delivery and installation” of the new home on the plaintiffs’ land. Further, defendant warranted that, “[f|or new homes, installation at the initial homesite will be completed in accordance with applicable governmental requirements.”
Defendant delivered the home in three pieces and installed it in March 2005, although much of the installation process remains a mystery. At trial, only one of the several members of the installation crew was identified. He was not licensed to install manufactured homes as required *513 by the State of Tennessee. See T.C.A. § 68-126-404(a) (“No person may install a manufactured home in this state unless such person is licensed by the commissioner as an installer.”).
Plaintiffs immediately began noticing defects that suggested the home was not level when installed, and they notified the defendant before they closed on the house. Defendant assured plaintiffs that it would repair and level the home, and plaintiffs closed on the home in reliance on defendant’s assurances. After several years of inspections and repair efforts, defendant never did level or repair the home to the plaintiffs’ satisfaction.
Plaintiffs eventually filed suit in the United States District Court for the Middle District of Tennessee in Nashville. Their complaint broadly alleged, among other claims, breach of contract in one count and federal breach of warranty in another. Within their breach-of-warranty count, plaintiffs complained that “Defendants!’] actions outlined herein constituted a breach of warranty as the Defendants have failed to act pursuant to the warranties and/or in conformity with 15 U.S.C.A. § 2304,” the Magnuson-Moss Warranty Act, “and/or other applicable law.”
Defendant quickly moved to compel arbitration and dismiss the case. Judge Echols entered an ordering denying defendant’s motion, finding that the arbitration provisions in the applicable sales agreement were unenforceable because they were unconscionable and the sales agreement was a contract of adhesion. Consistent with the district court’s ability to “look through” an arbitration agreement and consider jurisdiction, citing Vaden v. Discover Bank, 556 U.S. 49, 62, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009), Judge Echols concluded without further analysis that plaintiffs “allege a claim for breach of warranty under the Magnuson-Moss Warranty Act ... over which the Court has federal question jurisdiction.”
Judge Echols then passed the case to Magistrate Judge Brown for pre-trial processing. In the initial case-management order entered on March 11, 2009, Magistrate Judge Brown noted Judge Echols’ ruling on the arbitration issue but also noted that “[defendant’s] counsel raised the possibility at the conference that this Court might lack jurisdiction....” Magistrate Judge Brown advised counsel that “if there is a question of jurisdiction, Defendant’s counsel should file a motion to dismiss on those grounds as soon as practicable.” Defendant’s counsel never did, and filed an answer on March 25, 2009, that did not discuss jurisdiction.
After mentioning the issue again in another case-management order entered on March 16, 2009, Magistrate Judge Brown wrote on April 22, 2009, that “in view of Judge Echols’ decision on the arbitration matter ... there is no jurisdiction question at the present time.” There was no further mention of jurisdiction in the lower court, and the case moved forward under the assumption that plaintiffs’ MagnusonMoss Warranty Act claim conferred federal jurisdiction.
The case then proceeded to a bench trial before Judge Sharp. Judge Sharp construed the complaint as alleging a breach-of-contract claim under Tennessee law as well as a “breach of warranty and/or violation of Magnuson-Moss Warranty Act” claim. Bennett v. CMH Homes, Inc., No. 3:08-01212, 2012 WL 5416481 at *10 (M.D.Tenn. Nov. 6, 2012) (quoting Temple v. Fleetwood Enters., Inc., 133 Fed.Appx. 254, 268 (6th Cir.2005)). Judge Sharp found that defendant had breached both the contract and its warranties by failing to properly install and level the house, and also by failing to install the house in accordance with applicable governmental re *514 quirements — specifically, by failing to use installers who were licensed as required by Tennessee law. Id. at *8-10; cf. T.C.A. § 68-126-404(a). Having determined liability, Judge Sharp deferred ruling on the appropriate remedy and damages in hopes that the parties would settle. Id. at *11. They did not, and Judge Sharp awarded $39,238.29 in damages to the plaintiffs. Bennett v. CMH Homes, Inc., No. 3:08-01212, 2013 WL 146034 at *3-10, *15 (M.D.Tenn. Jan. 14, 2013). Plaintiffs appealed the amount of their award, and defendant cross-appealed to challenge both liability and the damages award.
At argument, we questioned the parties on whether the manufactured home is a “consumer product” and whether there is federal jurisdiction in this case. We learned that neither party was confident in federal jurisdiction when the parties originally filed. Rather, the parties seemed to have agreed to litigate in federal court. Counsel did not address the jurisdictional issue when Magistrate Judge Brown provided them with an opportunity. Because a “lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties,” Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934), we requested further briefing on the issue.
II.
Whether plaintiffs’ home is a “consumer product” appears at first to be both a jurisdictional question and a merits question. It is both an element of the statutory cause of action allegedly providing subject-matter jurisdiction in this case, as well as a “disputed fact [that] goes to the merits” of that claim. Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir.2007). In a recent Title VII case, the Supreme Court had before it a similar “subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy.” Arbaugh v. Y & H Corporation, 546 U.S. ,500, 511, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). The Court explained that “[subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiffs need and ability to prove the defendant bound by the federal law asserted as the predicate for relief — a merits-related determination.” Id. The Court clarified that a plaintiff need not prove the entire cause of action to obtain jurisdiction, but rather must only plead a “colorable claim” that “arises under a federal law.” Id. at 513,126 S.Ct. 1235 (citing 28 U.S.C. § 1331) (internal edits omitted). To plead such a claim, a plaintiff must prove “jurisdictional” facts but need not prove facts that go to the merits of the plaintiffs federal cause of action. Id. at 514, 126 S.Ct. 1235. Our court has said that under such circumstances where a question of “subject-matter jurisdiction also implicates an element of the cause of action,” as here, “then the district court should ‘find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiffs claim.’” Gentek, 491 F.3d at 330 (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).
Because the question of whether plaintiffs’ home is a “consumer product” implicates both jurisdiction and the merits of plaintiffs’ claim, we find jurisdiction and address the question as a merits issue.[2] *515 Arbaugh, 546 U.S. at 513, 126 S.Ct. 1235. Although not addressed below, whether the definition of “consumer product” includes plaintiffs’ home is a matter of statutory interpretation and. a question of law, see Miller v. Herman, 600 F.3d 726, 737 (7th Cir.2010), that we may answer in the first instance, see City Mgmt. Corp. v. U.S. Chem. Co., Inc., 43 F.3d 244, 255 (6th Cir.1994).
The text of the Magnuson-Moss Warranty Act and its legislative history provide the guidance necessary to resolve this question of interpretation. During Senate hearings considering the Act, Senator Broyhill of North Carolina asked Senator Moss, a sponsor of the Act, “[w]ould a house be within the definition of consumer product?” 102 Cong. Rec. 30171, 31323 (1974). Senator Moss answered that “[a] house would not fall within the definition of consumer product since a house is not ‘tangible personal property.’ ” Id. Here the house is not a house-trailer or a mobile home designed to be moved. Once it is constructed on the site, it is permanent. It would be taxed as real property and, at 2180 square feet, has the size and appearance of a regular house. The plaintiffs’ home is more like a house than “tangible personal property,” and thus is not a “consumer product” as was intended to be regulated by the Magnuson-Moss Warranty Act. See 15 U.S.C. § 2301(1).
Additionally, “[i]t is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.” Sandifer v. U.S. Steel Corp., — U.S. -, 134 S.Ct. 870, 876, 187 L.Ed.2d 729 (2014) (internal citation and quotation marks omitted). Dictionary entries for the words “consumer” and “consumer goods” during the general era of the Magnuson — Moss Act’s enactment describe products that are expendable or meant to be replaced periodically — not a permanent dwelling.[3] In contrast, Tennessee’s definition of “manufactured home” suggests something more substantial and permanent:
a structure, transportable in one (1) or more sections, which, in the traveling mode, is eight (8) body feet or more in *516 width, or forty (40) body feet or more in length, or, when erected on site, is three hundred twenty (320) or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained in the structure.
T.C.A. § 68-126-202(2).[4] Although a manufactured home within Tennessee’s definition might conceivably be considered a “consumer product,” the size, construction, and permanence of the plaintiffs’ home illustrate that their home is not a “consumer product.” As such, their federal cause of action fails on the merits.
III.
The district court must now determine whether it wishes to exercise supplemental jurisdiction over the plaintiffs’ state law claims. The district court’s ability to exercise “supplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed.” Orton v. Johnny’s Lunch Franchise, LLC, 668 F.3d 843, 850 (6th Cir.2012) (citation omitted); see also Arbaugh, 546 U.S. at 514, 126 S.Ct. 1235. Rather, “[fjollowing such a dismissal, the district court in its discretion may properly choose whether to exercise § 1367(a) jurisdiction over the supplemental state-law claims,” but “such a decision is ‘purely discretionary.’ ” Orton, 668 F.3d at 850. We remand so that the district court may exercise that discretion in the first instance and “resolve any confusion respecting the resolution of plaintiffs’ state law claims.” Neague v. Cynkar, 258 F.3d 504, 509 (6th Cir.2001).
IV.
We DISMISS plaintiffs’ claim under the Magnuson-Moss Warranty Act, and REMAND for further proceedings consistent with this opinion.[5]

. The Magnuson-Moss Warranty Act provides a federal cause of action for a "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation ... under a written warranty [or] implied warranty.” 15 U.S.C. § 2310(d). Under the Act, a "consumer” is defined as "a buyer ... of any consumer product.” 15 U.S.C. § 2301(3). The Act defines a "consumer product” as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes,” including attachments to real property but excluding real property. 15 U.S.C. § 2301(1).

. Another provision of the Magnuson-Moss Warranty Act’s cause of action is that it contains a $50,000 amount-in-controversy requirement. 15 U.S.C. § 2310(d)(3)(B). Nevertheless, we are permissive with this requirement, and it is the defendant’s burden to “prove to a legal certainty that the plaintiff has not satisfied the amount in controversy requirement.” Schultz v. Gen. R.V. Ctr., 512 F.3d 754, 760 (6th Cir.2008). Nei *515 ther party challenges the amount in controversy in this case, and thus we assume without decision that the amount is sufficient. Cf. Miller v. Herman, 600 F.3d 726, 728 n. 1 (7th Cir.2010).

. See II The Oxford English Dictionary 886 (1933) (defining "consumer” as "[h]e who or that which consumes, wastes, squanders, or destroys” and also as "[o]ne who uses up an article produced”); Random House Unabridged Dictionary 437 (2d ed.1993) (defining "consumer” as "a person or thing that consumes” and defining "consume” as "to destroy or expend by use; use up”); Webster’s New International Dictionary of the English Language 573 (2d ed.1946) (defining "consumer” as "[o]ne who or that which consumes” and defining "consume” as “[t]o destroy the substance of,” "[t]o use up (time),” and “[t]o eat or drink up (food)”); Webster’s Third New International Dictionary 490 (1986) (defining "consumer” as “one that consumes” and "one that utilizes economic goods” and defining "consume,” inter alia, as "to destroy or do away with completely,” "to use up,” and “to utilize (an economic good) in the satisfaction of wants”). See also Random House Unabridged Dictionary 437 (2d ed.1993) (defining "consumer goods” as "goods that are ready for consumption in satisfaction of human wants, as clothing or food, and are not utilized in any further production” (emphasis added)); Webster’s New International Dictionary of the English Language 573 (2d ed.1946) (defining "consumers’ goods” as "[ejconomic goods that directly satisfy human wants or desires, such as food, clothes, etc.” (emphasis added)). Another dictionary more broadly defines "consumer goods” as "economic goods that directly satisfy human wants or desires” but lists the term as synonymous with "consumer items.” Webster's Third New International Dictionary of the English Language 490 (2d ed.1946).

. Federal law defines "manufactured home” identically. 42 U.S.C. § 5402(6).

. We do not agree with our dissenting colleague that the meaning of a "consumer” product has changed over time and now includes stationary homes like "manufactured” homes. The Magnuson-Moss Warranty Act has not been amended and its text continues to cover only "consumer” products. The Act does not mention "homes” whether "manufactured,” “modular,” "mobile,” "stick-built” or otherwise. After the Act was passed, the FTC, by regulation, advised that, in its opinion, "consumer” products included "boats,” "automobiles,” and "mobile homes.” No FTC or HUD regulation has ever purported to amend the warranty statute to define "consumer” products to include "manufactured,” "modular” or other stationary homes erected in place.
Our dissenting colleague apparently also believes that the National Manufactured Housing and Safety Act, 42 U.S.C. §§ 5401-5426, adopted in 1974, as amended in 1980, 1981 and 1998, somehow amends the Magnuson-Moss Warranty Act and changes its original text and meaning; but the Safety Act does not purport to amend in any way or affect the meaning of the Warranty Act. The later Manufactured Housing Act does not even mention warranties or the Warranty Act. It deals with such things as wiring, plumbing and other building-code-type requirements. The Safety Act does not purport to create a private right of action but rather in § 5410 creates civil and criminal penalties and in § 5411 allows the government to bring actions for injunctive relief. The only private right of action for damages is under the Magnuson-Moss Act and its meaning remains unchanged.