NOT DESIGNATED FOR PUBLICATION

No. 119,178

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN CHRISTOPHER APPELHANZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JEAN M. SCHMIDT, judge. Opinion filed March 15, 2019. Affirmed.

*Brian Christopher Appelhanz*, appellant pro se.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and LEBEN, JJ.

PER CURIAM: While driving his pickup truck in downtown Topeka in March 2018, Brian Christopher Appelhanz received a citation for failing to wear a seatbelt—a violation of K.S.A. 2017 Supp. 8-2503(a)(1). Rather than pay the $30 fine, Appelhanz exercised his right to fight and requested a jury trial in Shawnee County District Court. The jury convicted him a little over a month later. Appelhanz now brings his fight to us. Representing himself, Appelhanz has offered a diffuse set of arguments ranging from the notion the seatbelt violation isn't a crime at all to a claimed right to tell the jurors they

1

could have and should have disregarded the law to find him not guilty. We find nothing in the offering requiring reversal of the conviction, notwithstanding Appelhanz' industry, and therefore affirm the verdict and the fine.

Kansas Highway Patrol Trooper Michael Rice saw Appelhanz driving without a seatbelt and signaled him to pull over. According to Trooper Rice, Appelhanz put on the seatbelt as he stopped. Trooper Rice asked Appelhanz why he hadn't been wearing a seatbelt. He replied that he "guessed" he was anti-seatbelt. Trooper Rice issued Appelhanz a citation for a violation of K.S.A. 2017 Supp. 8-2503(a)(1).

Under K.S.A. 2017 Supp. 8-2503(a)(1), anyone more than 18 years old riding in "a passenger car manufactured with safety belts" must use those seatbelts if they conform to specified federal safety standards. Separate statutory provisions apply to persons younger than 18 years old. See K.S.A. 2017 Supp. 8-1344; K.S.A. 2017 Supp. 8-2503(a)(2). A pickup truck is considered a passenger car. K.S.A. 8-1445. Appelhanz doesn't argue otherwise. Nor does he contend the seatbelts in his pickup truck were nonconforming under the federal standards. As provided in K.S.A. 2017 Supp. 8-2504(a)(1), "[p]ersons violating K.S.A. 8-2503(a)(1) shall be fined $30 and no court costs." In short, the fine is the sole penalty a district court can impose on an adult for failing to wear a seatbelt.

Appelhanz requested a jury trial and filed a motion to dismiss on the grounds that failure to wear a seatbelt is not actually a crime. The district court denied the motion. The State presented Trooper Rice as its only witness at the jury trial. Appelhanz did not cross-examine the officer and offered no evidence of his own. The district court largely rejected Appelhanz' proposed jury instruction and entered an order precluding Appelhanz from arguing to the jurors that they could find him not guilty if they believed a person should not be punished for refusing to wear a seatbelt. The jurors found Appelhanz guilty. The district court fined Appelhanz $30. Appelhanz has appealed.

2

On appeal, Appelhanz argues that a violation of K.S.A. 2017 Supp. 8-2504(a)(1) should not be treated as an unclassified misdemeanor, properly should be considered a traffic infraction, or really shouldn't be criminalized at all. The arguments blend together in his brief, although Appelhanz suggests a singular remedy—his conviction should be reversed. We disagree. For the most part, those arguments attack the Legislature's prerogative to define crimes and their punishments. See *State v. Sexton*, 232 Kan. 539, 542-43, 657 P.2d 43 (1983). And the fix for a perceived misclassification is to lobby the Legislature to change the law. We now examine the components of Appelhanz' argument more closely.

The Legislature has identified "traffic infractions" and the fines to be imposed for them in K.S.A. 2017 Supp. 8-2118(c). A seatbelt violation is not among them. Nearly all of the traffic offenses have scheduled fines of more than $30, suggesting they are considered more serious than a seatbelt violation.

The Legislature has classified and defined state crimes in K.S.A. 2017 Supp. 21-5102. There are three defined categories of crimes in K.S.A. 2017 Supp. 21-5102: (1) Felonies, generally those crimes punishable by incarceration in a state prison; (2) traffic infractions, as listed in K.S.A. 2017 Supp. 8-2118(c); and (3) cigarette or tobacco infractions identified in enumerated statutes. The fourth category entails a catchall for everything else and provides that "[a]ll other crimes are misdemeanors." K.S.A. 2017 Supp. 21-5102(d).

A seatbelt violation is plainly not a felony, a traffic infraction, or a cigarette or tobacco infraction. By process of elimination, it must be a misdemeanor.

In turn, the Legislature has statutorily divided and defined misdemeanors in K.S.A. 2017 Supp. 21-6602 essentially by the penalties that may be imposed. The statute

3

identifies class A, B, and C misdemeanors based on the decreasing terms of incarceration in a county jail that may be imposed as punishment for each class and then provides a catchall category of "unclassified misdemeanors" that "shall include all crimes declared to be misdemeanors without specification as to class." Pertinent here, an unclassified misdemeanor carries the penalty contained in the statute or statutes criminalizing the conduct. Again, a seatbelt violation falls in the unclassified misdemeanor category, since the only punishment is a fine.

At a granular level, Appelhanz points out that neither K.S.A. 2017 Supp. 8-2503 nor K.S.A. 2017 Supp. 8-2504 expressly identifies a seatbelt violation as a misdemeanor, so it shouldn't be considered one. But K.S.A. 2017 Supp. 21-6602(a)(4) simply provides that unclassified misdemeanors "include" crimes designated as misdemeanors without identifying a class but does not limit the category to only those offenses. As a catchall, the statutory language also covers crimes that do not have penalties making them class A, B, or C misdemeanors, even if they omit the word "misdemeanor." Those offenses would still be misdemeanors within the meaning of K.S.A. 2017 Supp. 21-5102(d). In that respect, Appelhanz' argument fails.

More broadly, Appelhanz says a seatbelt violation more logically ought to be considered a traffic infraction rather than an unclassified misdemeanor. That may be true in the sense it is akin to the statutorily designated traffic infractions. But the Legislature needn't be that tidy in how it pigeonholes crimes. And although Appelhanz arguably wins his pitch as to what may be logical, that does not provide any sort of legal basis for voiding his conviction merely because the Legislature reasonably might have labeled the offense a traffic infraction and didn't.

Similarly, Appelhanz submits that K.S.A. 2017 Supp. 8-2503 and K.S.A. 2017 Supp. 8-2504 do not establish a criminal offense at all. He notes the absence of a reference to the violation being a misdemeanor and its omission from the list of traffic

4

infractions, and he mentions the history of the seatbelt violations in Kansas. At one time, law enforcement officers could not stop a vehicle because an occupant was not wearing a seatbelt. If an officer had another reason for the stop, he or she could issue a warning about the safety implications of not wearing a seatbelt. The Legislature later imposed a minimal fine plus court costs for a violation and has tinkered with the amount of the fine over the years and whether court costs should be assessed. The Legislature also eventually amended K.S.A. 2017 Supp. 8-2503 to allow law enforcement officers to make stops specifically for seatbelt violations by drivers or front seat passengers. The version of K.S.A. 2017 Supp. 8-2504 setting the fine at $30 with no assessment of court costs went into effect July 1, 2017, and applies to Appelhanz.

The legislative history of seatbelt violations in Kansas may be interesting and even curious, especially severed from federal programs and regulations aimed at promoting highway safety, including seatbelt use. But that history is essentially irrelevant to whether a violation of K.S.A. 2017 Supp. 8-2503(a)(1) constitutes a crime. As we have already outlined, the statute defines conduct that fits within the classification for misdemeanors in K.S.A. 2017 Supp. 21-5102(d) based on the fine imposed for a violation in K.S.A. 2017 Supp. 8-2504.

The Legislature's use of the word "fine" to describe the punishment for a violation is telling. As set out in K.S.A. 2017 Supp. 21-5102, a crime is a defined act for which "a sentence of . . . imprisonment or fine[] or both . . . is authorized." So the statutory definition of a crime extends to a seatbelt violation because the punishment entails a fine. More generally, a fine is considered a form of punishment commonly attached to a wrong considered criminal in nature. See Webster's New World College Dictionary 542 (5th ed. 2016) (defining "fine" as "a sum required to be paid as punishment or penalty"); Merriam-Webster's Collegiate Dictionary 469 (11th ed. 2003) (defining "fine" as "a sum imposed as punishment for an offense"). We presume the words of a statute should be given their ordinary meaning unless the context plainly conveys something different. See

5

*Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 207, 117 S. Ct. 660, 136 L. Ed. 2d 644 (1997); *Bennett v. CMH Homes, Inc.*, 770 F.3d 511, 515 (6th Cir. 2014); *Garetson Brothers v. American Warrior, Inc.*, 51 Kan. App. 2d 370, 383, 347 P.3d 687 (2015). Had the Legislature intended to treat a violation of K.S.A. 2017 Supp. 8-2503(a)(1) as a noncriminal matter, it would have designated the amount to be paid for noncompliance as a civil penalty rather than as a fine. The Legislature regularly uses the term "civil penalty" to identify noncriminal sanctions. See, e.g., K.S.A. 8-1342 (civil penalty for gross weight violations for certain vehicles); K.S.A. 2017 Supp. 8-2426 (civil penalty for misuse of dealer license plates); K.S.A. 50-636 (civil penalties for violation of Kansas Consumer Protection Act, K.S.A. 50-623 et seq.).

We find no statutory basis to conclude the Legislature intended a seatbelt violation to be something other than a criminal wrong. Given the classification system the Legislature has adopted for criminal wrongs, the violation is an unclassified misdemeanor.

Finally, in this respect, Appelhanz suggests compelling public policy favors handling seatbelt violations as something other than criminal offenses. He makes a complementary argument that treating persons convicted of seatbelt violations as misdemeanants subjects them to undue and undeserved public opprobrium. We are unmoved. As we have indicated, public policy determinations in defining and punishing criminal conduct lie with the Legislature rather than the courts. See *State v. Spencer Gifts, LLC*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016) ("Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts."); *In re Marriage of Hall*, 295 Kan. 776, 784, 286 P.3d 210 (2012) (recognizing paramount roll of Legislature in identifying and implementing public policy). So Appelhanz should present his policy concerns to the Kansas House and Senate.

6

Appelhanz has not shown just what ignominy he has suffered as a convicted misdemeanant. Misdemeanants are not required to walk around wearing prominently displayed scarlet Ms, and they typically suffer no civil disabilities of the sort imposed on convicted felons. See *State v. Dugan*, 47 Kan. App. 2d 582, 600-01, 276 P.3d 819 (2012) (outlining civil disabilities resulting from felony convictions). No collateral legal disabilities attach to a seatbelt violation. More to the point, perhaps, even if Appelhanz had factually established some adverse reaction to his conviction because it is considered a misdemeanor rather than a traffic offense or a civil wrong, that also falls within the realm of public policy considerations entrusted to the legislative branch.

For his other issue on appeal, Appelhanz argues the district court impermissibly prohibited him from arguing to the jurors that they could (and should) find him not guilty because criminalizing the failure to wear seatbelts is a dumb idea or, more euphemistically, poor public policy. Basically, Appelhanz wanted to tell the jurors they had the ability to bring back a not guilty verdict even if the law and the evidence fully supported a conviction—as appeared to be the case here. In criminal cases, juries have that unchecked power known as nullification. *State v. McClanahan*, 212 Kan. 208, Syl. ¶ 3, 510 P.2d 153 (1973). But a criminal defendant has no legal right to a verdict based on jury nullification.

Accordingly, district courts should not instruct jurors that they may render a nullification verdict. 212 Kan. 208, Syl. ¶ 3; see PIK Crim. 4th 68.010 (instruction informs jurors: "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions."); *State v. Shay*, 56 Kan. App. 2d ___, ___ P.3d ___, 2019 WL 492671, at *6-7 (No. 118,303, filed February 8, 2019) (holding PIK Crim. 4th 68.010 does not impermissibly diminish power of jury nullification). Consistent with *McClanahan* and authority from numerous other jurisdictions, this court has regularly recognized that neither the prosecutor nor the defendant may suggest to jurors that they

can disregard the law and the evidence to return a renegade verdict. *State v. Bradford*, No. 115,008, 2016 WL 7429318, at *4 (Kan. App. 2016) (unpublished opinion) ("Lawyers may not speak of that power [of nullification] in the presence of the jurors, and district courts do not inform jurors about it."); *State v. Stinson*, No. 112,655, 2016 WL 3031216, at *3 (Kan. App. 2016) (unpublished opinion) (Atcheson, J., concurring) (lawyer for defendant may not "in closing argument ask the jurors to acquit the defendant in disregard of the law or the evidence"); *State v. Chambers*, No. 111,390, 2015 WL 967595, at *8 (Kan. App. 2015) (unpublished opinion) (recognizing lawyer may not argue nullification to jury and collecting supporting caselaw). We see no good reason to deviate from those decisions.

The district court committed no error in declining to instruct the jury on nullification and in prohibiting Appelhanz from discussing nullification in his closing argument or otherwise in front of the jury.

Affirmed.